2013 VT 107



In re A.W. and J.W. (2013-275)

 

2013 VT 107

 

[Filed 01-Nov-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 107
 
  


 No. 2013-275
 
  


 In re A.W. and J.W., Juveniles
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
  
 
 
 Superior Court, Lamoille Unit,
 
 
  
 
 
 Family Division
 
 
  
 
 
  
 
 
  
 
 
 October Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 A.
 Gregory Rainville, J.
 
 
  
 
 Michael Rose, St. Albans, for Appellant.

 

William H. Sorrell, Attorney General, Montpelier, and Joseph
L. Winn, Assistant Attorney

  General, Waterbury, for
Appellee.

 

 

PRESENT:   Reiber, C.J., Dooley, Skoglund and
Robinson, JJ., and Burgess, J. (Ret.), 

                    
Specially Assigned

 

 

¶ 1.            
SKOGLUND, J.   Father appeals the family court’s denial
of his motion to modify a final order terminating his parental rights to his
children, A.W. and J.W., born in November 2000 and October 2006,
respectively.  On appeal, father argues that there are changed
circumstances sufficient to modify or set aside the termination decision and
that the court’s basis for denial in this case lacked evidentiary
support.  We affirm.

¶ 2.            
In August 2012, the family court issued an order terminating father’s
parental rights to his daughters, A.W. and J.W., and denying termination as to
father’s older child, a son, E.W.  The court acknowledged that father had
made improvements by engaging in substance-abuse treatment and
counseling.  However, the court noted his extensive criminal history and
past history of failed supervision and that his inability to maintain
compliance with the requirements of release on furlough created a substantial
risk he would reoffend and again be unable to care for the children.[1]  Moreover, the court found that
father’s relationship with his daughters was “not entirely positive” and needed
substantial work for which there was insufficient time because of the girls’
need for permanency in their lives.  The court found that the girls had an
excellent connection with and adjustment to their current home with their
grandmother.  The court concluded that father would not be able to parent
the children within a reasonable period of time.[2]  Father appealed the termination of
his parental rights to his daughters, and this Court affirmed.  In re A.W. & J.W., No. 2012-321, 2013 WL 2631291 (Vt.
April 10, 2013) (3-Justice unpub. mem.).  

¶ 3.            
Two days before this Court’s decision issued, father filed a motion to
modify or set aside the termination order.  Father argued that one year
had elapsed since evidence was taken at the termination hearing and that his
positive “turnaround” had continued since that time.  Father requested a
modification of the termination decision to allow him to “strengthen the bond
with his two youngest children.”  The family court denied the motion based
on this Court’s affirmance of the termination decision.  Father then filed
a motion to reconsider with an accompanying affidavit.  Father averred
that he was maintaining his sobriety and employment, and had established a
strong and positive relationship with A.W. and J.W. through visits two or three
times a week.  On May 2, 2013, the court denied the motion without a
hearing, stating that it was “not in the children’s best interest, after living
a stable and nurtured relationship for two and a half years with their
grandmother, to be returned to the custody of their father.”  The court
noted father’s significant progress, but explained that there was still a
substantial risk that father would relapse or reoffend, resulting in
incarceration.  Father appeals.

¶ 4.            
A provision in the juvenile statutes, 33 V.S.A. § 5113, delineates
when an existing order in a child-neglect proceeding may be modified.  Section 5113(a) states that an order of the court may be set aside
in accordance with Vermont Rule of Civil Procedure 60.  In addition,
“the court may amend, modify, set aside, or vacate an order on the grounds that
a change in circumstances requires such action to serve the best interests of
the child.”  Id. § 5113(b).  The
statute specifies that “[a]ny order under this section
shall be made after notice and hearing.”  Id.
§ 5113(c).  

¶ 5.            
Father first argues that, just like other juvenile orders, a
termination-of-parental-rights order is subject to modification based on changed
circumstances if it is in the best interests of the children.[3]  This is a question of statutory
interpretation, which we review de novo.  In interpreting the statute, we
apply familiar guidelines of statutory construction aimed at implementing the
Legislature’s intent.  Miller-Jenkins v. Miller-Jenkins, 2006 VT
78, ¶ 34, 180 Vt. 441, 912 A.2d 951.  We
apply the plain language of the statute when the meaning is unambiguous.  Id. 
“Where there is uncertainty about legislative intent, we must consider the
entire statute, including its subject matter, effects and consequences, as well
as the reason for and spirit of the law.”  Id. (quotation omitted).


¶ 6.            
Father relies on two older cases to argue that the family court has the
ability to modify a termination order.  His reliance is misplaced.[4]  In the first, In re J.H.,
144 Vt. 1, 5, 470 A.2d 1182, 1184 (1983), the children, J.H. and R.H., were
found to be CHINS, taken into state custody, and placed in foster care. 
The parents’ rights were eventually terminated based on their
stipulations.  Over a year later, the parents filed a motion for relief
seeking to set aside the termination decisions and a motion to modify based on
changed circumstances.  The juvenile court dismissed the motions, and the
parents appealed.  The parents alleged that they were pressured into
relinquishing their rights and they did not voluntarily or willingly consent to
termination.  

¶ 7.            
The statutory provision in effect at the time provided: “An order of the
court may be set aside by a subsequent order of this court . . . when
it appears that the initial order was obtained by fraud or mistake sufficient
therefor in a civil action, or that the court lacked jurisdiction over a
necessary party or of the subject matter, or that newly discovered evidence so
requires.”  In re J.H., 144 Vt. at 4, 470 A.2d at 1184 (quoting 33
V.S.A. § 659(a), subsequently renumbered at 33 V.S.A. § 5532, 1989,
No. 148 (Adj. Sess.)).  On appeal, this Court addressed solely the motion
for relief, holding that the disposition on the claim of fraud made it
unnecessary to consider the petition to modify.  We held that the juvenile
court had jurisdiction to entertain parents’ motion pursuant to § 659(a)
as the statute applied to “all orders, including those that terminate residual
parental rights.”  Id. at 5, 470 A.2d at 1184. 
This Court emphasized that it was important for jurisdiction to exist because
“[c]ourts must be ready and able to afford relief against fraud whenever it
appears.”  Id.  As it applied to the facts of the case, we
explained that “[i]f the court orders terminating residual parental rights were
obtained by fraud, as appellants have alleged, it would be unconscionable to
immunize those orders from attack on the ground that the court lacks
jurisdiction.”  Id.  We reversed and remanded the termination
decision for consideration of the parties’ claim of fraud.  Id. at
5, 470 A.2d at 1185. 

¶ 8.            
There are obvious distinctions between In re J.H. and the case
before us.  The statute governing In re J.H. allowed the court to
set aside an order if that order was obtained by fraud or mistake, identifying
it as a Rule 60(b) motion.  See 33 V.S.A. § 5113(a) (“An order of the
court may be set aside in accordance with Rule 60 of the Vermont Rules of Civil
Procedure.”).  In In re J.H., providing relief against fraud was a
compelling policy reason that drove the decision.  Here, father is seeking
to modify a prior termination decision not because of fraud, but based on
changed circumstances, under § 5113(b).  Therefore, the compelling
policy reason that was present in In re J.H. does not apply here.

¶ 9.            
Father also cites to In re T.E., 155 Vt. 172, 582 A.2d 160
(1990), to support his argument that a motion to modify based on changed
circumstances may be used to amend a termination order.  Again, as in In
re J.H., the governing statute was 33 V.S.A. § 659(a).  In In
re T.E., the mother filed a timely motion in the lower court to amend the
findings following the termination decision.[5]  A ruling was substantially delayed
on her motion for more than three years, and, finally, at the court’s
invitation, the mother filed another motion to amend based on changed
circumstances, which the court considered following a hearing.  155 Vt. at
174, 582 A.2d at 161.  On appeal, the mother
challenged the standard of proof applied by the lower court to her
motion.  In answering that question, this Court held:

If a parent is able . . . to show by a
preponderance of the evidence that there has been a substantial change in
circumstances and that the best interests of the child require an amendment,
modification or vacation of a termination order, the State no longer can
maintain the claim that clear and convincing evidence exists to justify the
severance of parental rights.

Id. at
175, 582 A.2d at 162 (citation omitted).  It is upon this language
that father relies.  Although implicit in the court’s analysis was the
suggestion that termination orders may be modifiable on the basis of changed
circumstances, the State did not raise the issue, and we did not decide it in
that case.

¶ 10.         Further,
the juvenile statutes have undergone substantial changes since In re J.H.
and In re T.E., which alter the analysis.  Although the language of
§ 5113(b) continues to refer generally to modifying “an order” just as the
prior statute, 33 V.S.A. § 659, this seemingly plain language must be read in
light of the statute’s overall purpose.  The statute that existed at the
time of In re J.H. and In re T.E. had a purposes section that did
not reference providing timeliness of decisions or permanency for children.[6]  Since then, the Legislature has
added to the section, and specified that another purpose is: “To assure that
safety and timely permanency for children are the paramount concerns in
the administration and conduct of proceedings under the juvenile judicial
proceedings chapters.”  33 V.S.A. § 5101(a)(4)
(emphasis added).  We read the language of § 5101 in light of this
stated policy concern for timely permanency in juvenile proceedings.

¶ 11.         We
are also mindful that a termination-of-parental-rights order is unique in
child-neglect proceedings.  Unlike other orders, a termination decision is
a permanent order.  See In re C.P., 2012 VT 100, ¶ 21, __ Vt.
__, 71 A.3d 1142.  In addition, it is also the
only order that must be based on findings by clear and convincing
evidence.  33 V.S.A. § 5231(c) (explaining that to terminate parental
rights, court must make findings by “clear and convincing evidence,” but that
standard of proof for “all other issues” is preponderance of evidence). 
Termination of parental rights is predicated on findings by clear and
convincing evidence that a parent has failed to demonstrate he or she is
progressing towards reunification within a reasonable period of time and that
it is in the child’s best interest to have residual rights severed.  See In
re J.G., 2010 VT 61, ¶ 11, 188 Vt. 562, 2 A.3d 817
(mem.) (explaining that goal of requiring progress is
“to provide permanence and stability in the life of a child”).

¶ 12.         Reading
the statutory language in light of the legislative purpose to provide timely
permanency to children and taking into account the unique nature of a
termination order, we conclude that § 5113(b) does not apply to an order
terminating parental rights.[7] 
It would indefinitely expand the termination process and abolish the intended
permanency of a termination-of-parental-rights order if a parent could seek to
modify the order based on changed circumstances.  Here, in effect, father
is asking: “How about now?  Have I made substantial progress?”  There
is a time for permanence for children.  Allowing motions such as father’s would preclude a termination order from ever
becoming truly final, thus denying the timely permanency to the child that the
Legislature specifically desired. 

¶ 13.         Because
the termination order was not subject to father’s motion to modify based on
changed circumstances, the trial court properly dismissed it.

Affirmed.

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1]  At
the time of the final hearing, father was on furlough release and faced a
controlling sentence of up to twelve years, which would keep him under the
supervision of the Department of Corrections until March 2021.

 





[2]
 The court also noted that there had never been a disposition order that
considered reunification with or transfer of parental rights and
responsibilities to father as a case plan goal.  





[3]
 The juvenile statutes provide that a termination of parental rights and
responsibilities decision is a disposition order, 33 V.S.A. § 5318(a)(5), and
that disposition orders can be modified only by stipulation of the parties or
pursuant to a motion to modify brought under section 5113 of this title, id.
§ 5318(d).  





[4] 
Not only are the cases factually distinguishable, but, as explained more fully,
infra, ¶ 10, they were also decided before the creation of the
family court in 1990, see 4 V.S.A. § 33, and the enactment of substantial
changes to the juvenile statues in 2008, see 2007 No. 185 (Adj. Sess.), eff.
Jan. 1, 2009.





[5] 
Although not specified, the mother’s “timely motion to amend the findings,” In
re T.E., 155 Vt. at 174, 582 A.2d at 161, was likely one to alter or amend,
which must be filed within ten days of judgment.  V.R.C.P.
59(e).





[6] 
That purpose section read:

 

(a) The purposes of this chapter are:

(1) to provide
for the care, protection and wholesome moral, mental and physical development
of children coming within the provisions of this chapter;

(2) to remove
from children committing delinquent acts the taint of criminality and the
consequences of criminal behavior and to provide a program of treatment,
training, and rehabilitation consistent with the protection of the public
interest;

(3) to achieve
the foregoing purposes, whenever possible, in a family environment, separating
the child from his parents only when necessary for his welfare or in the
interests of public safety; and

(4) to provide
judicial procedure through which the provisions of this chapter are executed
and enforced and in which the parties are assured a fair hearing and their
constitutional and other legal rights recognized and enforced.

This chapter shall be construed to
effectuate these purposes.

33 V.S.A. § 631 (1989), 1967, No. 304 (Adj. Sess.), §
1, eff. July 1, 1968.

 





[7] 
We need not reach the scope or availability of other types of motions seeking
relief from judgment of termination-of-parental-rights orders.