2013 VT 107

## In re A.W. and J.W., Juveniles

[87 A.3d 508]

No. 13-275

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Burgess, J. (Ret.), Specially Assigned**

Opinion Filed November 1, 2013

Motion for Reargument Denied November 14, 2013

*Michael Rose*, St. Albans, for Appellant.

*William H. Sorrell*, Attorney General, Montpelier, and *Joseph L. Winn*, Assistant Attorney General, Waterbury, for Appellee.

¶ 1. **Skoglund, J.** Father appeals the family court's denial of his motion to modify a final order terminating his parental rights to his children, A.W. and J.W., born in November 2000 and October 2006, respectively. On appeal, father argues that there are changed circumstances sufficient to modify or set aside the termination decision and that the court's basis for denial in this case lacked evidentiary support. We affirm.

¶ 2. In August 2012, the family court issued an order terminating father's parental rights to his daughters, A.W. and J.W., and denying termination as to father's older child, a son, E.W. The court acknowledged that father had made improvements by engaging in substance-abuse treatment and counseling. However, the court noted his extensive criminal history and past history of failed supervision and that his inability to maintain compliance with the requirements of release on furlough created a substantial risk he would reoffend and again be unable to care for the children.[1] Moreover, the court found that father's relationship with his daughters was "not entirely positive" and needed substantial work for which there was insufficient time because of the girls' need for permanency in their lives. The court found that the girls

---

[1] At the time of the final hearing, father was on furlough release and faced a controlling sentence of up to twelve years, which would keep him under the supervision of the Department of Corrections until March 2021.

had an excellent connection with and adjustment to their current home with their grandmother. The court concluded that father would not be able to parent the children within a reasonable period of time.[2] Father appealed the termination of his parental rights to his daughters, and this Court affirmed. *In re A.W.*, No. 2012-321, 2013 WL 2631291 (Vt. April 10, 2013) (3-Justice unpub. mem.).

¶ 3. Two days before this Court's decision issued, father filed a motion to modify or set aside the termination order. Father argued that one year had elapsed since evidence was taken at the termination hearing and that his positive "turnaround" had continued since that time. Father requested a modification of the termination decision to allow him to "strengthen the bond with his two youngest children." The family court denied the motion based on this Court's affirmance of the termination decision. Father then filed a motion to reconsider with an accompanying affidavit. Father averred that he was maintaining his sobriety and employment, and had established a strong and positive relationship with A.W. and J.W. through visits two or three times a week. On May 2, 2013, the court denied the motion without a hearing, stating that it was "not in the children's best interest, after living a stable and nurtured relationship for two and a half years with their grandmother, to be returned to the custody of their father." The court noted father's significant progress, but explained that there was still a substantial risk that father would relapse or reoffend, resulting in incarceration. Father appeals.

¶ 4. A provision in the juvenile statutes, 33 V.S.A. § 5113, delineates when an existing order in a child-neglect proceeding may be modified. Section 5113(a) states that an order of the court may be set aside in accordance with Vermont Rule of Civil Procedure 60. In addition, "the Court may amend, modify, set aside, or vacate an order on the grounds that a change in circumstances requires such action to serve the best interests of the child." *Id.* § 5113(b). The statute specifies that "[a]ny order under this section shall be made after notice and hearing." *Id.* § 5113(c).

---

[2] The court also noted that there had never been a disposition order that considered reunification with or transfer of parental rights and responsibilities to father as a case plan goal.

¶ 5. ■ Father first argues that, just like other juvenile orders, a termination-of-parental-rights order is subject to modification based on changed circumstances if it is in the best interests of the children.[3] This is a question of statutory interpretation, which we review de novo. In interpreting the statute, we apply familiar guidelines of statutory construction aimed at implementing the Legislature's intent. *Miller-Jenkins v. Miller-Jenkins*, 2006 VT 78, ¶ 34, 180 Vt. 441, 912 A.2d 951. We apply the plain language of the statute when the meaning is unambiguous. *Id.* "Where there is uncertainty about legislative intent, we must consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law." *Id.* (quotation omitted).

¶ 6. Father relies on two older cases to argue that the family court has the ability to modify a termination order. His reliance is misplaced.[4] In the first, *In re J.H.*, 144 Vt. 1, 5, 470 A.2d 1182, 1184 (1983), the children, J.H. and R.H., were found to be CHINS, taken into state custody, and placed in foster care. The parents' rights were eventually terminated based on their stipulations. Over a year later, the parents filed a motion for relief seeking to set aside the termination decisions and a motion to modify based on changed circumstances. The juvenile court dismissed the motions, and the parents appealed. The parents alleged that they were pressured into relinquishing their rights and they did not voluntarily or willingly consent to termination.

¶ 7. The statutory provision in effect at the time provided: "An order of the court may be set aside by a subsequent order of this court . . . when it appears that the initial order was obtained by fraud or mistake sufficient therefor in a civil action, or that the court lacked jurisdiction over a necessary party or of the subject matter, or that newly discovered evidence so requires." *In re J.H.*, 144 Vt. at 4, 470 A.2d at 1184 (quoting 33 V.S.A. § 659(a), *subsequently renumbered at* 33 V.S.A. § 5532, 1989, No. 148 (Adj. Sess.)). On appeal, this Court addressed solely the motion for

---

[3] The juvenile statutes provide that a termination of parental rights and responsibilities decision is a disposition order, 33 V.S.A. § 5318(a)(5), and that disposition orders can be modified only by "stipulation of the parties or pursuant to a motion to modify brought under section 5113 of this title," *id.* § 5318(d).

[4] Not only are the cases factually distinguishable, but, as explained more fully, *infra*, ¶ 10, they were also decided before the creation of the family court in 1990, see 4 V.S.A. § 33, and the enactment of substantial changes to the juvenile statutes in 2008, see 2007 No. 185 (Adj. Sess.), eff. Jan. 1, 2009.

relief, holding that the disposition on the claim of fraud made it unnecessary to consider the petition to modify. We held that the juvenile court had jurisdiction to entertain parents' motion pursuant to § 659(a) as the statute applied to "all orders, including those that terminate residual parental rights." *Id.* at 5, 470 A.2d at 1184. This Court emphasized that it was important for jurisdiction to exist because "[c]ourts must be ready and able to afford relief against fraud whenever it appears." *Id.* As it applied to the facts of the case, we explained that "[i]f the court orders terminating residual parental rights were obtained by fraud, as appellants have alleged, it would be unconscionable to immunize those orders from attack on the ground that the court lacks jurisdiction." *Id.* We reversed and remanded the termination decision for consideration of the parties' claim of fraud. *Id.* at 5, 470 A.2d at 1185.

¶ 8. There are obvious distinctions between *In re J.H.* and the case before us. The statute governing *In re J.H.* allowed the court to · set aside an order if that order was obtained by fraud or mistake, identifying it as a Rule 60(b) motion. See 33 V.S.A. § 5113(a) ("An order of the Court may be set aside in accordance with Rule 60 of the Vermont Rules of Civil Procedure."). In *In re J.H.*, providing relief against fraud was a compelling policy reason that drove the decision. Here, father is seeking to modify a prior termination decision not because of fraud, but based on changed circumstances, under § 5113(b). Therefore, the compelling policy reason that was present in *In re J.H.* does not apply here.

¶ 9. Father also cites to *In re T.E.*, 155 Vt. 172, 582 A.2d 160 (1990), to support his argument that a motion to modify based on changed circumstances may be used to amend a termination order. Again, as in *In re J.H.*, the governing statute was 33 V.S.A. § 659(a). In *In re T.E.*, the mother filed a timely motion in the lower court to amend the findings following the termination decision.[5] A ruling was substantially delayed on her motion for more than three years, and, finally, at the court's invitation, the mother filed another motion to amend based on changed circumstances, which the court considered following a hearing. 155 Vt. at 174, 582 A.2d at 161. On appeal, the mother challenged the

---

[5] Although not specified, the mother's "timely motion to amend the findings," *In re T.E.*, 155 Vt. at 174, 582 A.2d at 161, was likely one to alter or amend, which must be filed within ten days of judgment. V.R.C.P. 59(e).

standard of proof applied by the lower court to her motion. In answering that question, this Court held:

> If a parent is able . . . to show by a preponderance of the evidence that there has been a substantial change in circumstances and that the best interests of the child require an amendment, modification or vacation of a termination order, the State no longer can maintain the claim that clear and convincing evidence exists to justify the severance of parental rights.

*Id.* at 175, 582 A.2d at 162 (citation omitted). It is upon this language that father relies. Although implicit in the court's analysis was the suggestion that termination orders may be modifiable on the basis of changed circumstances, the State did not raise the issue, and we did not decide it in that case.

¶ 10. ■ Further, the juvenile statutes have undergone substantial changes since *In re J.H.* and *In re T.E.*, which alter the analysis. Although the language of § 5113(b) continues to refer generally to modifying "an order" just as the prior statute, 33 V.S.A. § 659, this seemingly plain language must be read in light of the statute's overall purpose. The statute that existed at the time of *In re J.H.* and *In re T.E.* had a purposes section that did not reference providing timeliness of decisions or permanency for children.[6] Since then, the Legislature has added to the section, and specified that another purpose is: "To assure that safety and

---

[6] That purpose section read:

> (a) The purposes of this chapter are:

> (1) to provide for the care, protection and wholesome moral, mental and physical development of children coming within the provisions of this chapter;

> (2) to remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior and to provide a program of treatment, training, and rehabilitation consistent with the protection of the public interest;

> (3) to achieve the foregoing purposes, whenever possible, in a family environment, separating the child from his parents only when necessary for his welfare or in the interests of public safety; and

> (4) to provide judicial procedure through which the provisions of this chapter are executed and enforced and in

timely permanency for children are the *paramount concerns* in the administration and conduct of proceedings under the juvenile judicial proceedings chapters." 33 V.S.A. § 5101(a)(4) (emphasis added). We read the language of § 5101 in light of this stated policy concern for timely permanency in juvenile proceedings.

¶ 11. ■ We are also mindful that a termination-of-parental-rights order is unique in child-neglect proceedings. Unlike other orders, a termination decision is a permanent order. See *In re C.P.*, 2012 VT 100, ¶ 21, 193 Vt. 29, 71 A.3d 1142. In addition, it is also the only order that must be based on findings by clear and convincing evidence. 33 V.S.A. § 5231(c) (explaining that to terminate parental rights, court must make findings by "clear and convincing evidence," but that standard of proof for "all other issues" is preponderance of evidence). Termination of parental rights is predicated on findings by clear and convincing evidence that a parent has failed to demonstrate he or she is progressing towards reunification within a reasonable period of time and that it is in the child's best interest to have residual rights severed. See *In re J.G.*, 2010 VT 61, ¶ 11, 188 Vt. 562, 2 A.3d 817 (mem.) (explaining that goal of requiring progress is "to provide permanence and stability in the life of a child").

¶ 12. ■ Reading the statutory language in light of the legislative purpose to provide timely permanency to children and taking into account the unique nature of a termination order, we conclude that § 5113(b) does not apply to an order terminating parental rights.[7] It would indefinitely expand the termination process and abolish the intended permanency of a termination-of-parental-rights order if a parent could seek to modify the order based on changed circumstances. Here, in effect, father is asking: "How about now? Have I made substantial progress?" There is a time for permanence for children. Allowing motions such as father's would preclude a termination order from ever becoming truly final, thus denying the timely permanency to the child that the Legislature specifically desired.

---

which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

This chapter shall be construed to effectuate these purposes.

33 V.S.A. § 631 (1989), 1967, No. 304 (Adj. Sess.), § 1, eff. July 1, 1968.

[7] We need not reach the scope or availability of other types of motions seeking relief from judgment of termination-of-parental-rights orders.

¶ 13. ■ Because the termination order was not subject to father's motion to modify based on changed circumstances, the trial court properly dismissed it.

*Affirmed.*