NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 25

Nos. 2020-256 & 2020-293

In re C.L.S., Juvenile

Supreme Court

On Appeal from
Superior Court, Chittenden Unit,
Family Division

March Term, 2021

Thomas J. Devine, J.

Matthew Valerio, Defender General, and Kerrie Johnson, Juvenile Defender, Montpelier, for Appellant Father.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Jody A. Racht, Assistant Attorney General, Waterbury, for Appellee State.

Michael Rose, St. Albans, for Appellee Juvenile.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.     **EATON, J.**  Father appeals the dismissal of his motion to vacate the family court's order terminating his parental rights to son C.L.S. In his motion, father argued that the termination order must be set aside under Vermont Rule of Civil Procedure 60(b) because he received ineffective assistance of counsel. The family court determined that it lacked jurisdiction under 33 V.S.A. § 5103(d) because father filed the motion after C.L.S. was adopted, and dismissed the motion. We conclude that the family court correctly interpreted § 5103(d) and that its application of the statute did not deprive father of his rights to due process or equal protection. We therefore affirm.

## I. Factual and Procedural Background

¶ 2.    C.L.S. was born in February 2018.  Shortly after his birth, the Department for Children and Families (DCF) filed a petition alleging that C.L.S. was a child in need of care or supervision (CHINS) due to concerns about mother's use of illegal drugs during and after pregnancy.  Mother subsequently stipulated that C.L.S. was CHINS.  Following a hearing in July 2019, the court terminated the parental rights of both parents.  They appealed to this Court, and we affirmed the decision on January 10, 2020.  In re C.L.S., 2020 VT 1, __ Vt. __, 225 A.3d 644.  On February 6, 2020, by order of the probate court, C.L.S. was adopted by the foster parents who had cared for him since birth.

¶ 3.    On February 26, 2020, father moved for relief from judgment from the termination order pursuant to Rule 60(b), arguing that he received ineffective assistance of counsel at multiple critical points during the CHINS proceeding.  He asserted that the attorney who represented him at the beginning of the case failed to notify the court at the outset that he was a custodial parent, did not object to DCF conducting a suitability assessment of his home, arrived twenty minutes late to a critical temporary-care hearing, and did not request a contested merits hearing.  He further alleged that his subsequent attorney failed to present exhibits or evidence or call relevant witnesses at the termination hearing.  He supported his motion with an affidavit from another attorney, who opined that the errors of father's pretrial and trial attorneys undermined confidence in the outcome of the proceeding and deprived father of due process.

¶ 4.    C.L.S. and DCF jointly moved to dismiss father's motion, arguing that the family court's jurisdiction over the case had terminated under 33 V.S.A. § 5103(d) because the child had been adopted.  In response, father argued that the court had jurisdiction to consider the motion under 33 V.S.A. § 5113(a), which permits the family court to set aside "an order" in a CHINS proceeding in accordance with Rule 60.  Father argued that he had not received notice of the child's adoption, making it impossible for him to know the deadline for filing his motion.  He claimed

2

that if the court accepted DCF's interpretation of § 5103(d), the statute was unconstitutional because it would deprive him of the opportunity to seek redress for ineffective assistance of counsel and because it would unjustly discriminate against parents whose children have been adopted.

¶ 5.     In August 2020, the family court issued a written decision granting the motion to dismiss. The court concluded that it lacked subject matter jurisdiction to consider father's motion because the child had been adopted. The court rejected father's argument that § 5113(a) gave it authority to consider the motion, concluding that the more specific provision in § 5103(d) terminating the court's jurisdiction after adoption controlled. The court alternatively found that father's motion was not filed within a reasonable time as required by Rule 60(b)(6) because it was filed after the child's adoption. The court rejected father's argument that its interpretation of § 5103(d) violated due process by depriving him of a remedy for ineffective assistance, noting that this Court has not expressly recognized a right to effective assistance of counsel in termination-of-parental-rights proceedings. The court also rejected father's argument that its interpretation of § 5103(d) would violate federal and state equal protection guarantees.

¶ 6.     Father appealed the court's decision. He also moved for reconsideration, arguing that Vermont Rule of Probate Procedure 60 allows the probate court to reverse an adoption if the motion is filed within six months. Thus, he argued, it was unreasonable to interpret § 5103(d) to bar the filing of a Rule 60 motion after adoption. The court declined to consider this argument because father had failed to raise it in his original motion. Father filed a second appeal from the decision denying reconsideration. We consolidated father's appeals for review.

II.  Father's Claims on Appeal

¶ 7.     Father argues that we should expressly recognize a statutory or constitutional right to effective assistance of counsel in CHINS proceedings. He urges us to adopt a less-stringent standard for ineffective-assistance-of-CHINS-counsel claims than the standard applicable to

3

criminal proceedings that is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Father argues that the family court had jurisdiction to hear his motion to vacate the termination order pursuant to 33 V.S.A. § 5113(a). He claims that the court's interpretation of § 5103(d) deprived him of due process and equal protection because it precluded him from being able to challenge a termination order that was invalid due to ineffective assistance of counsel.

¶ 8.     We conclude that the trial court correctly determined that it lacked jurisdiction under 33 V.S.A. § 5103(d) to consider father's post-adoption Rule 60 motion. We further conclude that the court's interpretation of § 5103(d) did not violate father's rights to due process and equal protection. Accordingly, we find it unnecessary to decide in this case whether parents have the right to effective assistance of counsel in CHINS proceedings or what standard would apply to ineffective-assistance claims in that context.

## III.  Analysis

### A.  Standard of Review

¶ 9.     Rule 60(b) permits the court to vacate an order, upon motion, for six enumerated reasons. See V.R.C.P. 60(b); V.R.F.P. 2(a) (making V.R.C.P. 60 applicable to CHINS proceedings). As the family court found, the only potentially applicable basis for granting father relief in this case was Rule 60(b)(6), which permits the court to vacate an order for "any other reason justifying relief from the operation of the judgment." V.R.C.P. 60(b)(6). We ordinarily apply a deferential standard of review to a court's exercise of its discretion under Rule 60(b)(6). <u>Richwagen v. Richwagen</u>, 153 Vt. 1, 3-4, 568 A.2d 419, 420 (1989) (reviewing decision regarding Rule 60(b)(6) request to modify property division in divorce order for abuse of discretion). In this case, however, the court declined to exercise its discretion at all because it determined that it no longer had subject matter jurisdiction over the proceeding under the CHINS statute. "Whether the court has authority to exercise its discretion is a legal issue that we review de novo." <u>Penland v. Warren</u>, 2018 VT 70, ¶ 6, 208 Vt. 15, 194 A.3d 755; see also <u>State v. Pecora</u>, 2007 VT 41, ¶ 4,

4

181 Vt. 627, 928 A.2d 479 (mem.) (explaining that interpretation of statute is subject to de novo review).

B. Whether the Family Court Lacked Jurisdiction to Consider Father's Rule 60 Motion

¶ 10.   The family division of the superior court is a court of limited jurisdiction, the scope of which is determined by statute. In re R.L., 163 Vt. 168, 171, 657 A.2d 180, 183 (1995); see In re A.M., 2019 VT 79, ¶ 9, __ Vt. __, 222 A.3d 489 ("A CHINS case is a legislatively created proceeding in which the family division of the superior court is vested with special and limited statutory powers."). "We strictly construe the family court's grant of authority, and we do not infer jurisdiction where it does not explicitly exist." Office of Child Support ex rel. Lewis v. Lewis, 2004 VT 127, ¶ 7, 178 Vt. 204, 882 A.2d 1128. "Because the jurisdiction of the trial courts is shaped by the legislature, subject matter jurisdiction is a question of statutory interpretation." Baron v. McGinty, 2021 VT 6, ¶ 29, __ Vt. __, __ A.3d __ (quotation and citation omitted). When interpreting a statute, our primary goal is to effectuate legislative intent as expressed in the words of the statute itself. Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215.

¶ 11.   Under § 5103(a) of Title 33, the family court has "exclusive jurisdiction over all proceedings concerning a child who is or who is alleged to be a delinquent child or a child in need of care or supervision brought under the authority of the juvenile judicial proceedings chapters, except as otherwise provided in such chapters." 33 V.S.A. § 5103(a).  However, § 5103(d) states that "[i]f the child is not subject to another juvenile proceeding, jurisdiction shall terminate automatically . . . upon the adoption of a child following a termination of parental rights proceeding."  The language of § 5103(d) is unambiguous: the adoption of the child who is the subject of the CHINS proceeding automatically divests the family court of subject matter jurisdiction over the proceeding.

5

¶ 12.    Here, both parents' rights to C.L.S. were terminated in July 2019.  That decision became final on February 3, 2020, when this Court issued its mandate.[1]  C.L.S. was adopted on February 6, 2020.  It is undisputed that the child was not subject to another juvenile proceeding at that time.[2]  Accordingly, under the plain language of § 5103(d), the family court's jurisdiction over the case ended on February 6, and it lacked jurisdiction to entertain father's subsequent Rule 60 motion.

¶ 13.    Father argues the family court had jurisdiction to consider his motion under a different statutory provision, 33 V.S.A. § 5113(a), which makes Rule 60 applicable to CHINS proceedings.  To address father's argument, we look to two rules of statutory construction.  First, "[i]n construing legislative intent, we must consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law."  Shires Hous., Inc., 2017 VT 60, ¶ 9.  "To that end, laws relating to a particular subject should be construed together and in harmony if possible."  Holmberg v. Brent, 161 Vt. 153, 155, 636 A.2d 333, 335 (1993) (quotation omitted).  Second, "where two statutes deal with the same subject matter, and one is general and

---

[1]  Father claims that the court erred by failing to address his argument that C.L.S. was not legally free for adoption until the deadline for filing a petition for certiorari with the U.S. Supreme Court from this Court's January 10, 2020 decision had passed.  Father points to no relevant authority to support this position.  Father did not file a motion for reargument; accordingly, the termination of father's parental rights became final when our mandate issued on February 3, 2020.  See V.R.A.P. 41(a).  Father did not seek to stay the mandate under Rule 41, and it does not appear that he actually filed a petition for certiorari.  Accordingly, we see no error.

[2]  Father argues that the opening phrase in § 5103(d)—"[i]f the child is not subject to another juvenile proceeding"—does not require the other proceeding to actually be pending, noting that the Legislature sometimes uses "subject to" in other contexts to refer to the possibility of an event.  However, in the statutes cited by father, the Legislature used the term "may be subject to," clearly indicating possibility rather than certainty.  See 33 V.S.A. § 143a (providing that person who fraudulently obtains benefits "may be subject to" civil suit); id. § 5122 (providing that person who engages in misconduct during juvenile proceeding "may be subject to" sanctions).  By contrast, the plain language of § 5103(d) simply requires the child to be "not subject to" another proceeding.  In our view, it is clear that this phrase is intended to mean that the child is not then affected by a pending juvenile case.

6

the other specific, the more specific statute controls." Town of Brattleboro v. Garfield, 2006 VT 56, ¶ 10, 180 Vt. 90, 904 A.2d 1157.

¶ 14. Section 5113(a) states generally that "[a]n order of the Court may be set aside in accordance with Rule 60 of the Vermont Rules of Civil Procedure." 33 V.S.A. § 5113(a). The reference to "[a]n order" is broad and, standing alone, would seemingly allow father to seek to obtain the relief he is seeking. However, § 5103(d) more specifically addresses the scope of the family court's subject matter jurisdiction over a particular proceeding and when that jurisdiction ends. Accordingly, we agree with the family court that § 5103(d) controls. See Town of Brattleboro, 2006 VT 56, ¶ 10.

¶ 15. Our interpretation of these provisions is consistent with the purpose of the CHINS statute as a whole, which is to protect the best interests of children and to ensure permanency for them within a reasonable time. See In re A.G., 2004 VT 125, ¶ 17, 178 Vt. 7, 868 A.2d 692 ("CHINS proceedings are protective in nature and focus on the welfare of the child, the child's safety and permanency being the paramount concern."). The Legislature has expressly instructed that the statute "shall be construed . . . to ensure that safety and timely permanency for children are the paramount concerns in the administration and conduct of proceedings under the juvenile judicial proceedings chapters." 33 V.S.A. § 5101(a)(4). "We read the language of [the statute] in light of this stated policy concern for timely permanency in juvenile proceedings." In re A.W., 2013 VT 107, ¶ 10, 195 Vt. 226, 87 A.3d 508 (rejecting argument that § 5113(b) permits court to modify termination order based on changed circumstances; although the provision "refer[s] generally to modifying 'an order,' . . . this seemingly plain language must be read in light of the statute's overall purpose" of ensuring timely permanency for children). To further its stated goal of permanency for children, the Legislature has determined that adoption terminates the family court's jurisdiction over the proceeding. It logically follows that at that point, the procedure for relief set forth in Rule 60 is no longer available to a party.

7

¶ 16. Father claims that Rule 60 is routinely applied to grant relief in civil and family cases where the court has already "lost jurisdiction" because the case has been dismissed, closed, or otherwise disposed of. In all of the cases cited by father, however, the court retained jurisdiction over the subject matter of the case, even if the case itself had ended. See McCleery v. Wally's World, Inc., 2007 VT 140, 183 Vt. 549, 945 A.2d 841; Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc., 149 Vt. 365, 543 A.2d 1320 (1988); Cliche v. Cliche, 143 Vt. 301, 466 A.2d 314 (1983); R. Brown & Sons, Inc. v. Int'l Harvester Corp., 142 Vt. 140, 453 A.2d 83 (1982). The difference between those cases and this one is that the family court's subject matter jurisdiction terminated automatically by statute once C.L.S. was adopted. It therefore lacked the authority to consider father's Rule 60 motion.

¶ 17. Father further argues that if, as DCF argues, DCF has the authority to finalize an adoption at any point after termination—including while an appeal is pending—our interpretation of § 5103(d) will permit DCF to unilaterally cut off a parent's ability to seek redress for ineffective assistance of counsel in the family court by pursuing adoptions before appeals are decided.[3] However, the plain language of § 5103(d) makes clear that the family court loses jurisdiction upon adoption after a termination-of-parental-rights proceeding only if no juvenile proceeding concerning the child is pending. An appeal of a termination order is a juvenile proceeding. Furthermore, if an appeal is taken, the termination proceeding is not yet over. Accordingly, we interpret the statute to mean that the family court retains jurisdiction over the case during the pendency of an appeal from a termination decision even if DCF decides to pursue adoption in the meantime. To hold otherwise would render 33 V.S.A. § 5113(a) completely superfluous in

_____

[3] DCF maintains that it has the power to immediately move forward with adoption proceedings for a child once parental rights have been terminated by the family court. However, it represented that in cases where a timely appeal is filed, it does not seek to finalize adoption until this Court has concluded its review and the mandate has issued. For the purposes of this appeal, we do not need to decide whether DCF in fact has the authority to finalize an adoption while an appeal is pending.

8

termination cases.  See In re Margaret Susan P., 169 Vt. 252, 263, 733 A.2d 38, 47 (1999) ("We avoid a statutory construction that would render part of the statutory language superfluous.").

C.  Whether the Court's Application of § 5103(d) Violates Due Process

¶ 18.    Father contends that our interpretation of § 5103(d) violates his right to due process by depriving him of a remedy for challenging the termination order based on ineffective assistance of counsel.  We disagree.

¶ 19.    It is well-settled that "state intervention to terminate the relationship between a parent and the child must be accomplished by procedures meeting the requisites of the Due Process Clause."  Santosky v. Kramer, 455 U.S. 745, 753 (1982) (quotation and alterations omitted). However, "due process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotation omitted).  The nature of the process due in a given situation requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

¶ 20.    Here, the private interest that is affected by the application of § 5103(d) is father's ability to further challenge the validity of the termination decision based on ineffective assistance of counsel.  "[The U.S. Supreme Court] has acknowledged that a parent's right to the custody, companionship, and care of his or her children is an important interest warranting due process protection, [and] that the interest in a fair and accurate termination decision is 'a commanding one.' " In re S.C., 2014 VT 7, ¶ 5, 195 Vt. 415, 88 A.3d 1220 (quoting Lassiter v. Dep't of Soc.

9

Servs. of Durham Cty., N.C., 452 U.S. 18, 27 (1981)). Assuming without deciding that father has a right to effective assistance of counsel in a termination proceeding, we agree that he has a strong corollary interest in challenging an erroneous deprivation of his parental rights due to counsel's inadequate performance.

¶ 21. We conclude, however, that the risk of an erroneous deprivation of this interest is low. Father was entitled to, and in fact did, appeal the termination decision.[4] While in the criminal context we ordinarily do not address ineffective-assistance-of-counsel claims on direct appeal, see State v. Bacon, 163 Vt. 279, 296, 658 A.2d 54, 66 (1995), parties routinely raise such claims on direct appeal in termination-of-parental-rights cases, and we have considered them on their merits. See, e.g., In re K.F., 2013 VT 39, ¶ 22, 194 Vt. 64, 72 A.3d 908 (affirming termination of father's parental rights because even assuming that parents have right to effective assistance in termination cases, father's allegations failed to meet standard set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984)); In re M.B., 162 Vt. 229, 237, 647 A.2d 1001, 1005 (1994) (holding father failed to demonstrate prejudice from trial counsel's alleged incompetence sufficient to create reasonable probability that result of termination proceedings would have differed). Despite this, father did not raise his ineffective-assistance claim on direct appeal.

¶ 22. Even if the availability of an ineffective-assistance claim on direct appeal was arguably unclear, father could have asked this Court to remand his appeal to allow him to pursue a Rule 60(b) motion, or could have simply filed the motion with the family court at any point while the appeal was pending. See V.R.F.P. 12(d)(2)(C) (stating that family court in juvenile case retains jurisdiction during pendency of appeal to modify or vacate order under 33 V.S.A. § 5113). Father also could have moved to stay the mandate once this Court issued its decision in the direct appeal

_____

[4] The attorney who represented father on appeal did not represent father during the proceeding in the family court.

10

to give him sufficient time to file a Rule 60 motion. See V.R.A.P. 41(c). He did none of these things.

¶ 23. Father asserts that he only became aware of the potential for relief under Rule 60(b) on February 11, 2020, after C.L.S. was adopted. In his briefing in the direct appeal, however, father argued that his trial attorneys had failed to identify the legal errors by the family court that he argued on appeal and had failed to advocate for what he wanted during the temporary-care stage of the CHINS proceeding. He therefore was plainly aware of his attorneys' allegedly deficient representation at that time but did not make a claim of ineffective assistance. He has not adequately explained why he could not raise his ineffective-assistance claim earlier in the litigation.

¶ 24. The probable value of the additional safeguard proposed by father—that parents whose rights have been terminated receive notice of the impending adoption of their child—is also low. The effect of an order terminating parental rights is to free the child for adoption, and the order typically states this explicitly. See 33 V.S.A. § 5318(a)(5) (stating that court may enter order terminating parental rights and "transferring legal custody and all residual parental rights to [DCF] without limitation as to adoption"). In this case, the July 15, 2019 family court order terminating father's parental rights and the accompanying permanency order specifically stated that C.L.S. would be released for adoption on that date. Father was therefore on notice that C.L.S. could be adopted once his appeal concluded. Giving parents such as father additional notice when adoption is impending in probate court would be of little value. By that point in a case, the court has found termination to be in the child's best interests by clear and convincing evidence, a parent has had the opportunity to appeal, and any appeal has been resolved. The parent has had ample time to assert a claim of ineffective assistance. Requiring additional notice would likely trigger further motion practice that would only serve to prolong the litigation unnecessarily. See Lassiter, 452 U.S. at 32 (explaining that "child-custody litigation must be concluded as rapidly as is consistent with fairness").

11

¶ 25. Meanwhile, the State has a compelling interest in achieving timely permanency for children in CHINS proceedings. See 33 V.S.A. § 5101(4) (stating that "safety and timely permanency for children are the paramount concerns in the administration and conduct of proceedings under the juvenile judicial proceedings chapters"); In re P.K., 2017 VT 3, ¶ 13, 204 Vt. 102, 164 A.3d 665 ("The need for finality is particularly great in termination cases."). Additionally, there is a strong public interest in the finality of adoptions, as reflected in provisions of the Adoption Act that limit a party's ability to disturb an adoption once it is entered. See 15A V.S.A. § 3-706(c) to (e) (providing that motion for relief from adoption decree may not be filed more than six months after order is entered, stating that appeal from adoption decree does not operate as automatic stay, and limiting types of challenges that may be brought in appeal from adoption decree); Id. § 3-707 ("Consistent with the best interest of an adoptee, a decree of adoption is a final order for purposes of appeal when it is entered."); Scrivens v. Elizabeth Lund Home, 138 Vt. 593, 595, 421 A.2d 1276, 1278 (1980) (acknowledging that "adoption cases demand a unique degree of finality"). As the U.S. Supreme Court has recognized:

> It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged.

Lehman v. Lycoming Cty. Children's Servs. Agency, 458 U.S. 502, 513-14 (1982). Such "[e]xtended uncertainty would be inevitable in many cases" if parents could continue to file Rule 60(b) motions after children have been adopted. Id. at 514.

¶ 26. The State also has an interest in preserving scarce judicial and administrative resources, which would be undermined if a parent could file a Rule 60(b) motion after a termination decision is resolved on appeal and the child's adoption is concluded. Cf. In re A.W., 2013 VT 107, ¶ 12 ("It would indefinitely expand the termination process and abolish the intended

permanency of a termination-of-parental-rights order if a parent could seek to modify the order based on changed circumstances."). While considerations of judicial economy are less compelling than the other interests identified above, they add weight to the State's paramount interest in finality in CHINS proceedings.

¶ 27. In sum, we conclude that interpreting § 5103(d) to limit father's right to set aside the termination order to the time period before the child was adopted does not unfairly deprive him of due process. While father has an undisputedly important interest in ensuring the fairness and accuracy of the termination decision, he was afforded adequate alternative procedural protections in this case. Under these circumstances, his interest in being able to challenge the termination decision based on ineffective assistance of counsel is outweighed by the paramount public policy interests in ensuring timely permanency for children and the finality of adoptions. See Dep't of Human Servs. v. B.A.S., 221 P.3d 806, 817 (Or. 2009) (concluding in parental termination case that state of Oregon "did not run afoul of due process by narrowly limiting parents' right to obtain a set-aside under [Oregon's equivalent of Rule 60] to the time period before the adoptions of the children were complete").

D. Whether the Court's Application of § 5103(d) Denied Father Equal Protection

¶ 28. Father alternatively claims that our interpretation of § 5103(d) violates the equal protection guarantees contained in the Fourteenth Amendment to the U.S. Constitution and the Common Benefits Clause of the Vermont Constitution because it unfairly discriminates against parents whose children have been adopted.

¶ 29. We apply different but related standards when reviewing claims brought under the Equal Protection Clause and the Common Benefits Clause. "As a general rule, challenges under the Equal Protection Clause are reviewed by the rational basis test, whereby distinctions will be found unconstitutional only if similar persons are treated differently on wholly arbitrary and capricious grounds." Brigham v. State, 166 Vt. 246, 265, 692 A.2d 384, 395-96 (1997) (quotation

13

omitted).  However, a statute that "affects fundamental constitutional rights or involves suspect classifications . . . necessitates a more searching scrutiny; the State must demonstrate that any discrimination occasioned by the law serves a compelling governmental interest, and is narrowly tailored to serve that objective."  Id.  When analyzing a challenge brought under the Common Benefits Clause, by contrast, we ask "(1) what part of the community is disadvantaged by the legal requirement; (2) what is the governmental purpose in drawing the classification; and (3) does the omission of part of the community from the benefit of the challenged law bear a reasonable and just relation to the governmental purpose?"  In re Hodgdon, 2011 VT 19, ¶ 23, 189 Vt. 265, 19 A.3d 598 (quotation omitted).

¶ 30.  "In order to trigger equal protection analysis at all, however, a [party] must show that he was treated differently as a member of one class from treatment of members of another class similarly situated."  State v. George, 157 Vt. 580, 585, 602 A.2d 953, 956 (1991).  Here, father has failed to show that he was treated differently than other similarly situated parents.  In fact, he was treated the same as all other parents whose parental rights have been terminated and whose children have been adopted.  To the extent he was treated differently than parents whose rights were terminated but whose children's adoption had not been finalized, he was not similarly situated to those parents.  Cf. Quinlan v. Five-Town Health All., Inc., 2018 VT 53, ¶ 24, 207 Vt. 503, 192 A.3d 390 (rejecting claim that dismissal for failure to comply with statutory filing requirements in medical malpractice violated plaintiff's right to equal protection because plaintiff was treated the same as any other plaintiff who failed to comply with statute).

¶ 31.  Furthermore, the application of § 5103(d) to bar post-adoption Rule 60 litigation bears a reasonable relation to a legitimate and compelling governmental purpose: establishing timely permanency and stability for children in CHINS proceedings.  See 33 V.S.A. § 5101(4); In re P.K., 2017 VT 3, ¶ 13.  Limiting a parent's ability to challenge a termination order to the time period prior to adoption serves these important interests of finality and permanency and does not

14

offend equal protection. It was father's failure to raise his claim earlier—a matter within his control—that led to father being disadvantaged under the statute, not the statute itself. We therefore reject father's claim that § 5103(d) deprives him of equal protection.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 32. **ROBINSON, J., dissenting.** Although I recognize the important values underlying the majority's analysis, I cannot agree that 33 V.S.A. § 5103(d) trumps § 5113(a) and essentially cuts off otherwise expressly authorized motions for relief from judgment upon a child's adoption. I part ways because I view 33 V.S.A. § 5113(a) as the more specific of the two statutes, the majority's construction is in tension with the general understanding of the relationship between post-judgment relief pursuant to Rule 60(b) and subject-matter jurisdiction, and the majority's construction would greatly diminish the operation of § 5113(a) in the class of cases when it is most critical, virtually eliminating the opportunity to vindicate the statutory right to effective counsel in some cases. I acknowledge the strong policy favoring timely permanency for children, while raising some countervailing considerations. But, I believe the Court can fashion ample guardrails, whether by rule or decision, to ensure that permanency for children in DCF custody will not be unduly compromised by an interpretation that I believe better harmonizes the two statutes. By preserving a meaningful remedy for the extraordinarily rare case in which a parent's rights may be terminated due to ineffective counsel, my interpretation would give meaning to the statutory right to effective counsel. I consider these points more fully below.

¶ 33. Like the majority, I recognize that when two statutes conflict, "specific statutory provisions generally trump more general ones." Smith v. Desautels, 2008 VT 17, ¶ 17, 183 Vt.

15

255, 953 A.2d 620. But I do not agree that § 5103(d) is the more specific provision. That statute establishes the general scope of the court's jurisdiction over a child in a CHINS case: the jurisdiction does not extend beyond the child's eighteenth birthday, may terminate sooner than that by order of the court, and terminates automatically upon the court's transfer of legal custody to a parent, guardian, or custodian without conditions, or adoption following a termination-of-parental-rights proceeding. 33 V.S.A. § 5103(c)(1), (d)(2)-(3). Section 5113(a) is a narrow provision that applies specifically to motions to modify or vacate court orders; it expressly provides that "[a]n order of the Court may be set aside in accordance with Rule 60 of the Vermont Rules of Civil Procedure." On its face, this seems to be a narrower provision designed to ensure a specific avenue of relief from final orders in juvenile proceedings. For that reason, by my reading of the statutes, the Legislature's express codification of this specific form of relief—one that almost by definition extends the course of a case and by extension the court's assertion of jurisdiction over a minor—seems to trump the general description of the circumstances that automatically terminate the court's continuing jurisdiction over a child. At most, the narrower-versus-more-general-provision framework is a toss-up; these two provisions are focused on overlapping but distinct subject matter, and a case can be made for either as the "more specific."

¶ 34. The view that § 5113(a) trumps § 5103(d) is more congruent with the general principle that Rule 60(b) motions trigger a continuation of the original proceedings so that if the trial court had jurisdiction when the suit was filed, it has jurisdiction to entertain a Rule 60(b) motion. See 12 J. Moore, et al., Moore's Federal Practice ¶ 60.61 (3d ed. 2021) ("It has long been established that no independent federal jurisdictional basis is needed to support a Rule 60(b) motion proceeding. A Rule 60(b) motion is considered a continuation of the original proceeding."); State v. Danforth, 2008 VT 69, ¶ 15, 184 Vt. 122, 956 A.2d 554 (recognizing that where state rule is identical to federal rule in all material respects, "we rely on federal precedent for guidance").

16

¶ 35. Moreover, a contrary interpretation significantly diminishes the scope of § 5113(a) in its most critical application: a challenge to a termination of parental rights. The provision doesn't limit the scope of Rule 60(b) relief to matters prior to a termination-of-parental-rights order; on its face, it authorizes a Rule 60(b) challenge to a final order terminating parental rights. As a practical matter, this may be one of its rarest, but most critical, applications. After all, nobody is likely to seek to vacate an order reunifying parent and child and returning full custody to a child's parents without restrictions. Insofar as DCF is empowered to pursue adoption proceedings while a termination-of-parental-rights decision is pending, or within hours or days of the Court's decision on appeal, the majority's interpretation would leave a parent who has an unquestionable claim of ineffective assistance of counsel, including a parent whose claims arose on appeal or did not become apparent until resolution of the appeal, with no avenue for vindicating the statutory right to effective counsel.

¶ 36. I don't disagree with the majority that, to the extent the statutory interpretation in this case turns on policy considerations, ensuring timely permanency for children in DCF custody is a vital goal that warrants considerable weight in any policy-based interpretation of the statute. But, in the context of a framework that seeks to balance many significant and sometimes cross-cutting concerns, it is not the only factor. The U.S. Supreme Court has emphasized that a parent's interest in the "companionship, care, custody and management" of the parent's children is "an interest far more precious than any property," and that "[a] parent's interest in the accuracy and justice of the decision to terminate" the parent's parental status is "a commanding one." Santosky v. Kramer, 455 U.S. 745, 758-59 (1982) (quotation omitted). And unless the state proves parental unfitness, "the child and . . . parents share a vital interest in preventing erroneous termination of their natural relationship," and "the interests of the child and . . . parents coincide to favor use of error-reducing procedures." Id. at 760-61. In short, even focusing solely on the child, the goal of timely permanency may, in some cases, be in tension with the child's interest in avoiding an

17

erroneous termination of parental rights. For this reason, I do not believe that the legislative policy favoring permanency overrides all other considerations, or that it compels an interpretation of the statute that would render the statutory right to effective counsel a paper tiger in a small but important class of cases.

¶ 37. In addition, the Vermont Rules of Probate Procedure allow Rule 60(b) motions to set aside adoptions on specified grounds for up to six months after the decree. This fact undermines the suggestion that the adoption decree marks the point of no return, even in the rare and extreme cases in which the termination of parental rights that precedes the adoption rests in substantial part on ineffective representation of a parent or child.

¶ 38. I am confident that this Court can fashion reasonable limitations to ensure that allowing for meaningful vindication of the right to effective counsel does not erode efforts to ensure timely permanency for children. First and foremost, pursuant to V.R.C.P. 60(b)(6), a motion to vacate a termination of parental rights on account of ineffective assistance of counsel must be filed "within a reasonable time." The majority offers various reasons why, in this case, father could have and should have raised his ineffective-assistance claims earlier. Ante, ¶¶ 22-23. Had the trial court taken evidence and made findings on this question, it might have concluded that father did not file his motion within a reasonable time given the facts of this case. In general, parties would reasonably be expected to raise challenges that counsel was ineffective during the period preceding an initial disposition order well before the resolution of an appeal of a subsequent order terminating parental rights.[5] In addition, this Court is free, through court rules or decisional law, to establish specific temporal or other restrictions on the exercise of the Rule 60(b) right to

---

[5] Implicit in this expectation may be a relaxed burden of proof with respect to prejudice in some cases, since a party, and the court, may not be able to determine the impact of ineffective assistance until final resolution of a case based on an order affirming a final disposition by the trial court.

ensure that parents or children seeking to challenge a termination-of-parental-rights order do so as expeditiously as reasonably possible.

¶ 39. Thankfully, cases in which ineffective assistance of counsel has led to the termination of a parent's rights are rare. This Court has seen few challenges over the years, and none were potentially meritorious. See, e.g., In re K.F., 2013 VT 39, ¶ 22, 194 Vt. 64, 72 A.3d 908 (declining to decide whether ineffective-assistance-of-counsel claim may be raised to challenge TPR decision because parent could not show ineffective assistance of counsel); In re S.W., 2008 VT 38, ¶ 7, 183 Vt. 610, 949 A.2d 442 (mem.) (declining to reach question whether law permits ineffective-assistance-of-counsel claim because mother failed to show counsel's performance was below standard of practice or that she was prejudiced). But it isn't difficult to imagine the rare case in which inadequate representation of a parent or child leads to an erroneous termination of a parent-child relationship. Though such cases may be extraordinarily unusual, the consequences would be intolerable.

_____

Associate Justice

19