VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     23-AP-016

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JUNE TERM,   2023

In re L.C., Juvenile
(T.C., Father\* & K.C., Mother\*)

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Windham Unit,
Family Division
CASE NO. 20-JV-00394
Trial Judge: Jennifer Barrett

In the above-entitled cause, the Clerk will enter:

Parents appeal from the court's final order terminating their parental rights to their son, L.C.  Both parents argue that their due process rights were violated when the court changed one of the termination hearing dates from remote to in-person.  Father also argues that the termination decision should be reversed because the court made various errors leading up to its determination that L.C. was a child in need of care or supervision (CHINS).  We affirm.

In September 2020 the Department for Children and Families (DCF) first received reports from then-eight-year-old L.C.'s school, therapist, and medical providers that they had been unable to engage with L.C.'s parents regarding his care.  In particular, the reports alleged that parents had been unavailable and unwilling to sign medical releases for L.C. to receive necessary medical care.  DCF investigated and learned that, through an informal arrangement, L.C. had been residing with his parental grandparents and parents saw L.C. only on weekends.  L.C.'s paternal grandparents reported finding drug paraphernalia in parents' room.  DCF attempted to communicate with parents regarding these various reports but were not successful.

In November 2020, given that parents had been unreachable for several months regarding L.C.'s medical and educational care and grandparents' lack of legal authority to make care decisions for L.C., the State filed a non-emergency CHINS petition and a motion for a temporary care hearing.  The court held a preliminary hearing in December 2020 and, with parents' consent, issued a conditional custody order for L.C. to continue residing with grandparents.  The order acknowledged that the court was formalizing an arrangement already in place.

In April 2021, the court entered a merits order based on a stipulation by parents, adjudicating L.C. a CHINS.  In that stipulation, parents agreed that they had left L.C. generally in the care of grandparents and that neither L.C.'s school, medical providers, nor DCF were able to contact them.  In May 2021, the court ended the conditional custody order and transferred

custody of L.C. to DCF, but continued to place L.C. with grandparents. Parents agreed to this plan.

In July 2021 the court issued an initial disposition order with a goal of reunification with either or both parents by November 2021. The case plan goals included securing safe and stable housing to replace their temporary housing at a motel, which parents acknowledged was not a safe place for L.C.; achieving financial security; maintaining sobriety; and demonstrating the ability to meet L.C.'s needs including emotional and physical safety.

In February 2022, the State recommended changing the case plan goal to adoption and moved to terminate both parents' parental rights. The State asserted that parents were still living temporarily at the same motel, did not have stable income, and continued not to engage with L.C.'s school or medical providers.

The court held a two-day hearing on termination of parental rights on September 7 and 27, 2022. The court provided notice to the parties that the hearings would be held remotely via WebEx, consistent with other prior proceedings in this matter.

On September 7, all parties initially appeared by telephone or video. But once the hearing began, parents moved for a continuance, citing emotional difficulties interfering with their ability to focus on the hearing. The court allowed parents to delay their personal testimony until the second hearing date, but the court otherwise denied their motion and proceeded with the first day of hearing. Shortly afterward on the same day, before the first witness began testifying, parents experienced some connectivity issues. The court learned that parents were attending the hearing remotely from a public area of their hotel where a hotel employee was working, because that was the only place in the hotel they could get a reliable internet connection. The court considered the need for CHINS proceedings to be confidential. After hearing from parents' counsel that they typically rely on the public bus for transportation, the court confirmed the public bus schedule and determined that parents, who were located approximately three miles from the courthouse, could quickly ride the bus the courthouse. The court decided to reconvene the hearing in person to allow parents approximately one hour to get to the courthouse. Parents did not object to appearing in person or taking the bus to the courthouse.

When the court reconvened, neither parent appeared. Their attorney appeared in person but could not reach them. The parties and court agreed to postpone the hearing for approximately three additional hours, which the court noted would allow several additional opportunities for parents to arrive at the courthouse by bus. When the court reconvened again, parents still did not appear and their attorney still could not reach them. Parents' attorney objected to the court proceeding without parents being present, but the court proceeded and stated that parents would be permitted to recall any witness who testified in their absence at the next hearing date. Parents' attorney participated in the remainder of that first hearing day, including raising objections on parents' behalf and cross-examining witnesses.

Parents and their counsel participated remotely from a private location for the entire second day of hearing. Parents did not recall any witnesses, but they each testified on their own behalf.

The court issued a thorough written order terminating both parents' parental rights. It found that parents had made little to no progress toward any case plan goals. In particular, at the time of the termination hearing, they remained living at the same motel, which was provided by the State through a transitional housing voucher, and it was not clear how much longer they

2

would be able to live there.  Both parents testified that the motel was unsafe and an unsuitable home for L.C.  They had no plan for a permanent housing solution.  Parents also failed to cooperate with DCF to establish their sobriety.  They repeatedly declined to provide urine samples for testing and declined opportunities to work with substance use support workers.  Although the court found that parents love L.C., it found that throughout the pendency of the case they had been unwilling to work with DCF to gain a better understanding of L.C.'s needs, had no engagement with L.C.'s teachers, therapist, or medical providers, and generally failed to prioritize L.C.'s needs.  The court found by clear and convincing evidence that there had been a change in circumstances because parents' progress in their ability to care for L.C. had stagnated.

The court analyzed all of the statutory best-interests factors and concluded that all factors weighed in favor of termination of parental rights.  Given parents' continuing struggles with sobriety, unstable housing, and failure to demonstrate the ability to meet and prioritize L.C.'s needs, the court concluded that they had not played a constructive role in L.C.'s life for more than two years, and that they would not be able to resume parental duties within a reasonable time.  The court also noted that L.C. was thriving in the home of his grandparents and in his current school, and that grandparents were willing to adopt L.C.  Ultimately, the court concluded that termination of both parents' parental rights was in L.C.'s best interests.

On appeal, neither parent challenges the sufficiency of the evidence or any of the court's findings or conclusions.  Father argues that the termination decision should be reversed because the CHINS determination rested on infirm temporary custody orders.  He contends that the court failed to properly notice or hold a temporary care hearing, and that the court did not have otherwise have authority to issue a conditional custody order at a preliminary hearing because the State did not demonstrate any emergency circumstances.  He also argues that there was insufficient evidence for the State to have obtained temporary custody of L.C. before merits disposition.

We note that neither parent appealed the CHINS order following initial disposition, and these arguments appear to be a collateral attack on the CHINS decision.  "Parties are generally precluded from collaterally attacking a final CHINS merits determination at a later stage of the proceedings."  In re C.L.S., 2020 VT 1, ¶ 16, 211 Vt. 344.  As we explained in In re C.L.S.:

> [P]arents can prevail on their argument that the [CHINS and initial disposition] orders are void only if they satisfy the criteria for obtaining relief from a final judgment.  In the context of a collateral attack, the fact that a judgment is erroneous does not automatically make it void.  Rather, a judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.

Id. ¶ 17 (quotations and citations omitted).

Father's arguments focus primarily on alleged statutory violations.  He suggests that the family division's alleged statutory missteps in relation to temporary custody orders violated his due process rights and deprived it of jurisdiction to adjudicate L.C. a CHINS and issue its initial disposition order.  We rejected similar arguments raised on appeal of a termination decision after initial disposition in In re C.L.S.  There, we explained:

A challenge made on subject matter grounds must show that the court lacked jurisdiction over the general category of case. If the court has jurisdiction over the category of case, its erroneous exercise of that jurisdiction does not make the resulting judgment void. Here, the family court plainly had jurisdiction over the category of case. See 33 V.S.A. § 5103(a) (giving family division of superior court exclusive jurisdiction over CHINS proceedings).

. . . .

Unless a court has usurped power not accorded to it, its exercise of subject matter jurisdiction is binding in subsequent proceedings as long as the jurisdictional question was litigated and decided or the parties had an opportunity to contest subject-matter jurisdiction but failed to do so . . . . In the case before us, parents had the opportunity to challenge the allegedly erroneous exercise of subject-matter jurisdiction by appealing the CHINS determination after initial disposition. They failed to do so, and therefore are precluded from raising the issue now.

Id. ¶¶ 19, 23 (quotations and alterations omitted).

We reject father's arguments here for substantially the same reasons. He does not contest the family division's categorical jurisdiction over CHINS proceedings. Not only did father explicitly agree to all the orders that he now challenges, including the CHINS determination, but he also failed to raise his contentions by appealing the CHINS determination after initial disposition. He is precluded from raising them now.

Both parents also argue on appeal that their due process rights were violated when the court changed the first trial date from remote to in-person due to parents' connectivity and privacy issues. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." In re C.L.S., 2021 VT 25, ¶ 19, 214 Vt. 379 (quotation omitted). The record demonstrates that the court acted consistently with due process. The court provided parents with notice of the date and time of the initially remote hearing on September 7. Parents and their counsel successfully appeared remotely and began participating. When the court noticed that parents' video connection was faltering and learned that parents were attending the hearing from a public location with a nonparty present in the same room, it took appropriate action. Consistent with the court's obligation to hold juvenile proceedings confidentially, 33 V.S.A. § 5110, it changed the hearing from remote to in-person. The court confirmed that parents could take a short public-bus ride to the courthouse and provided them with clear notice on the record of when the hearing would reconvene in person. The court gave parents multiple opportunities to attend in person before proceeding with only their attorney present. It also allowed parents to present their personal testimony at the second hearing date and recall any witnesses that testified in their absence. These procedures assured that parents had the opportunity to be heard at a meaningful time and in a meaningful manner.

Moreover, although parents' attorney objected to the court proceeding in parents' absence, neither parents nor their counsel objected to the court changing the hearing from remote to in-person, or suggested that they could not ride the bus or had inadequate time to reach the courthouse. Their acquiescence to the court's procedures precludes them from challenging those

same procedures now. See <u>Bull v. Pinkham Eng'g Assocs.</u>, 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

Finally, parents do not identify any specific prejudice to them from their absence during the September 7 hearing and none is apparent. See <u>In re R.W.</u>, 2011 VT 124, ¶ 17, 191 Vt. 108 ("[A]n error warrants reversal only if a substantial right of the party is affected." (quotation omitted)). Their counsel participated fully in the hearing on parents' behalf by cross-examining witnesses and raising objections. Parents declined the opportunity to recall any of the witnesses who testified at the first hearing date, and both parents testified on their own behalf at the next hearing date. We see no basis to reverse the court's judgment terminating parents' parental rights.

<u>Affirmed</u>.


BY THE COURT:



Harold E. Eaton, Jr., Associate Justice



William D. Cohen, Associate Justice



Nancy J. Waples, Associate Justice