John D. TOBIN v. Barbara A. HERSHEY

[820 A.2d 982]

Nos. 02-041 & 02-111

¶ 1. December 24, 2002. Husband appeals the family court's decision under V.R.C.P. 60(b)(6) granting wife a percentage of the pension benefits he had begun receiving after accepting an early retirement offer from his employer. We uphold the family court's decision requiring husband to share the early-retirement pension benefits with wife and ordering him to pay wife's attorney's fees associated with the Rule 60(b) proceeding; however, with the exception of a relatively small lump-sum payment that husband elected to receive immediately upon retiring, we conclude that the court should have limited wife's award to a percentage of those pension benefits that husband received after wife filed her request for relief on September 1, 2000. We also reject wife's cross-appeal, in which she argues that the court should have awarded her a higher percentage of husband's benefits. Accordingly, the family court's decision is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

¶ 2. The parties married in August 1966 and separated in September 1987. In April 1988, they entered into a separation agreement that distributed the marital property. The single most valuable marital asset was husband's pension from International Business Machines (IBM), where husband had been working since 1967. The separation agreement and its accompanying Qualified Domestic Relations Order (QDRO) were drafted by wife's attorney and incorporated into the November 1988 final divorce order. Essentially, the final order awarded wife twenty-five percent of husband's retire-

ment benefits unless he retired before the age of sixty, in which case she would receive a percentage of benefits that would provide her with the same amount of money as if he had retired at age sixty. After obtaining the QDRO, IBM advised the parties that if husband retired before age sixty, the company would not be able to calculate what his retirement benefit would have been had he worked until age sixty; therefore, the QDRO had to be amended to provide a specific formula for calculating benefits in the event husband retired before age sixty. In response, the parties' attorneys stipulated to an amended QDRO that set forth a specific formula for calculating benefits in the event husband retired before age sixty. The amended QDRO was adopted by the court and incorporated into an amended final order filed in February 1989.

¶ 3. In July 1992, when husband was forty-seven years old, he informed wife that he had accepted an early retirement program offered by IBM, but he did not advise her that under the program he would be eligible to begin receiving retirement benefits in 1997, at age fifty-two. In the fall of 1992, the parties stipulated to a second amended final order that revised certain aspects of the first amended order. In April 1997, husband informed wife that he expected to begin receiving IBM retirement benefits that summer. Within weeks of hearing from husband, wife wrote to IBM to inquire about receiving her share of the benefits. IBM responded by informing the parties that it interpreted the QDRO as allowing wife to receive benefits only upon husband reaching age sixty. In the letter, IBM further advised that if the parties disagreed among themselves or with its interpretation of the QDRO and could not reach some agreement, it would be necessary to obtain a clarifying order from the family court. In June 1997, wife responded by letter informing IBM that she did not agree with its interpretation of the amended QDRO; however, she did

nothing to challenge that interpretation until September 1, 2000, when the attorney she hired in the spring of 1999 filed a motion to clarify her pension rights under the amended final order and QDRO. In her motion, wife asked the family court to confirm that she was entitled to receive her share of benefits concurrent with husband's receipt of benefits.

¶ 4. Husband filed a motion to dismiss, which the family court denied. Following a series of hearings, the court granted wife's motion, awarding her, among other things, a money judgment representing one half of a $5271 lump-sum personal retirement provision payment and a forty-nine-percent share of the monthly core pension benefits husband had been receiving since July 1997. The court ordered that the final divorce order and QDRO be amended to state explicitly that wife would receive a forty-nine-percent share of husband's pension benefits for so long as he receives them. Following a later hearing, the court also ordered husband to pay wife's attorney's fees and court costs plus interest.

¶ 5. Although wife characterized her September 2000 request for relief as a motion to clarify, she sought relief under both V.R.F.P. 4(j) and V.R.C.P. 60(b), see V.R.F.P. 4(a)(1) (rules of civil procedure apply in divorce cases except as provided otherwise in Rule 4), and the family court granted her relief under Rule 60(b)(6). On appeal, neither party claims that the family court should have treated wife's motion as one to clarify or enforce rather than to reopen and modify the divorce judgment. Rather, both parties make arguments exclusively under V.R.C.P. 60(b). Given the posture of this case, we will review the family court's decision under Rule 60(b). Cf. *Schwartz v. Haas*, 169 Vt. 612, 614, 739 A.2d 1188, 1190-91 (1999) (mem.) (family court was enforcing rather than modifying final divorce order by offsetting property settlement that wife failed to pay husband against husband's maintenance obligation).

¶ 6. On appeal, husband argues that (1) the plain language of the amended final divorce order and QDRO provides that wife is not entitled to her share of husband's pension benefits until husband reaches age sixty; (2) relief is unavailable under Rule 60(b)(6) because wife's claims fall within other sections of Rule 60(b) and are time-barred under those sections; (3) even if Rule 60(b)(6) was applicable, no extraordinary circumstances existed that warranted granting wife's motion; and (4) the trial court abused its discretion by awarding wife attorney's fees. In addition to refuting husband's claims of error, wife argues in her cross-appeal that, under the terms of the amended final divorce order and QDRO, the family court should have awarded her sixty-four percent, rather than forty-nine percent, of husband's pension benefits.

¶ 7. These arguments concern the following provisions from the original and amended final divorce order and QDRO. The original November 1988 divorce order, which incorporated the parties' settlement agreement, provided, in relevant part:

> 12. . . . [A]s a property settlement and not as alimony to BARBARA, BARBARA shall receive and be entitled to that share of JOHN'S IBM Retirement Benefits for her life as are set forth below and as are set forth in the QDRO.
>
> . . . .
>
> f. BARBARA shall be the Alternate Payee under JOHN'S IBM Retirement Benefits . . . .
>
> . . . .
>
> h. While JOHN is receiving retirement benefits from IBM, IBM will pay to BARBARA for life that share of JOHN's retirement benefits as equals twenty-five percent (25%)

thereof, calculated as if only he and she were receiving benefits.

> i. In order to deal with the issue of JOHN'S early retirement from IBM [if that occurs] (voluntary retirement before age sixty (60)), IBM will then [beginning with JOHN'S sixtieth (60th) birthday] pay so much of JOHN'S retirement benefits to BARBARA as equals but does not exceed the retirement benefits she would have received had JOHN retired from IBM at age sixty (60) (Minimum Benefit).

The November 1988 QDRO included provisions identical to paragraphs f., h., and i., with the exception that the bracketed clauses inserted above in paragraph i. were added.

¶ 8. As noted, IBM indicated that it could not comply with paragraph i. of the final order (paragraph 11 of the QDRO) because if husband retired early there would be no way to calculate what his retirement benefit would have been had he waited until age sixty to retire. In response, the parties stipulated to the following amended provisions, which replaced paragraph i. of the original final order:

> k. In the event JOHN is employed by IBM in full-time status, at his attaining age sixty (60), retirement benefits for BARBARA and JOHN will begin whenever thereafter JOHN receives them, but not beyond his sixty-fifth (65th) birthday. In the event, however, JOHN is not employed by IBM in full-time status at age sixty (60), retirement benefits for BARBARA and JOHN will commence on his sixtieth (60th) birthday. When JOHN retires from IBM (retirement at age sixty (60) or thereafter), he will

elect the Alternate Payee as his joint and survivor beneficiary at twenty-five percent (25%) for her life, calculated as if he had no other survivor coverage . . . .

l. For the purpose of this paragraph, "early retirement" from IBM shall mean retirement by JOHN before his sixtieth (60th) birthday. In order to deal with JOHN's early retirement from IBM, IBM will, at the time of JOHN's sixtieth (60th) birthday, pay to BARBARA so much of JOHN'S retirement benefits as is derived from the following formula:

(1) Retirement at age 43 through 48 inclusive:
$$25\% + \frac{(60 - \text{age at separation from IBM}) \times 35\%}{10}$$

(2) Retirement at age 49 through 53 inclusive:
$$25\% + \frac{(60 - \text{age at separation from IBM}) \times 30\%}{10}$$

(3) Retirement at age 54 through 57 inclusive:
$$25\% + \frac{(60 - \text{age at separation from IBM}) \times 25\%}{10}$$

(4) Retirement at age 58 through 59 inclusive:
$$25\% + \frac{(60 - \text{age at separation from IBM}) \times 20\%}{10}$$

These same provisions were added to the amended QDRO, and both documents were adopted by the family court, replacing the original final divorce order and QDRO.

¶ 9. Husband first argues that the family court erred by denying his motion to dismiss wife's request for relief because the plain language of the amended final order and QDRO provides that wife is not entitled to share in his pension benefits until he reaches age sixty. Wife responds that the plain language of the final order and QDRO demonstrates that the parties intended for both husband and wife to receive the IBM retirement benefits at the same time, and that paragraph l. of the amended order was intended only to provide a formula for calculating wife's share of the pension benefits if husband retired early, not to allow husband to collect early retirement benefits while requiring wife to wait until husband reached age sixty.

¶ 10. We conclude that the family court did not err in denying husband's motion to dismiss. The amended final order and QDRO provide that, if husband is employed full-time at IBM at age sixty, wife is entitled to receive a specified portion of husband's retirement benefits when he receives them, but that if husband is not employed by IBM at age sixty, wife is entitled to receive a specified portion of husband's retirement benefits commencing on his sixtieth birthday. At first blush, the plain language of this provision appears to support husband's position. But, considering each of the relevant documents in their entirety as well as the circumstances under which they were amended, there is little doubt that the parties assumed that they would share all of husband's retirement benefits whenever he received them, and that if husband retired early, he would not be eligible to receive benefits until he reached age sixty. The specific language relied on by husband was intended only to provide a mechanism by which IBM could calculate benefits if husband retired early, not to limit the time frame in which wife could receive those benefits. The plain language of the relevant documents did not require the family court to dismiss wife's request for relief.

¶ 11. Next, husband argues that, even if the family court was not required to dismiss wife's motion, it erred in applying Rule 60(b) to the facts of this case. Husband acknowledges the substantial discretion that this Court gives the trial court with respect to rulings on whether to grant relief under Rule 60(b). See *Bingham v. Tenney*, 154 Vt. 96, 99, 573 A.2d 1185, 1186 (1990) (decision on Rule 60(b) motion is committed to trial court's sound discretion and will stand on appeal unless record clearly and affirmatively indicates that such discretion was withheld or abused). Nonetheless, he argues that in this instance the family court abused its discretion because relief under Rule 60(b)(6), the catch-all provision, "is available only when a ground justifying relief is not encompassed within any of the first five classes of the rule." *Alexander v. Dupuis*, 140 Vt. 122, 124, 435 A.2d 693, 694 (1981). According to husband, wife was really seeking relief as the result of a claimed mistake or newly discovered evidence, and yet failed to seek relief under the one-year time limit set forth in Rule 60(b)(1) (mistake) and (2) (newly discovered evidence). We do not agree that wife's reasons for seeking relief foreclosed her from proceeding under Rule 60(b)(6). Rule 60(b)(1) generally applies when the parties have mistaken beliefs concerning facts or events occurring before their agreement was made, not those that occurred after the agreement and judgment. See *McGee v. McGee*, 974 P.2d 983, 989 (Alaska 1999). Similarly, 60(b)(2) generally applies when the parties are unaware of evidence existing at the time of the judgment and, through no fault of their own, discover that evidence only after the judgment. See 11 C. Wright, et al., Federal Practice and Procedure § 2859, at 302-10 (1995). Neither situation exists here. Husband's opportunity to obtain retirement benefits before age sixty did not arise until long after the amended divorce became final.

There was no mistake or newly discovered evidence.

¶ 12. Husband argues, however, that even if Rule 60(b)(6) applies, the trial court abused its discretion in granting wife relief because no extraordinary circumstances existed and wife's delay in filing her motion was unreasonable. In making this argument, husband stresses that there was an eleven-year delay between the amended final divorce order and wife's filing of her motion to clarify. He points out that IBM informed wife in 1988 how it was interpreting the QDRO, and that husband told wife in 1992 that he was retiring early.

¶ 13. We conclude that the court acted within its discretion in granting relief, but went too far, given the circumstances, in granting wife relief retroactive to the date husband began receiving the early retirement benefits. Cf. *Riehle v. Tudhope*, 171 Vt. 626, 629-30, 765 A.2d 885, 889-90 (2000) (mem.) (upholding family court's refusal to grant relief to wife under Rule 60(b)(6) where wife waited five years before challenging separation agreement); *In re Marriage of Jennings*, 980 P.2d 1248, 1255-56 (Wash. 1999) (en banc) (upholding trial court's decision to grant relief to wife under Rule 60(b)(6) where husband's unanticipated transfer of pension benefits to disability benefits deprived wife of her share of marital estate). Regarding husband's contentions, we do not agree that wife delayed eleven years in bringing this action. Wife may have known as early as 1992 that husband was retiring early, but she did not know that husband would be receiving benefits before he reached age sixty until shortly before he began actually receiving those benefits in the summer of 1997. Wife immediately protested IBM's decision not to provide her with a share of those benefits, but then did not follow up with a lawsuit until three years later on September 1, 2000. Thus, the delay attributable to wife was

at most three years, not eleven years, as husband suggests.

¶ 14. Nevertheless, a three-year delay in itself is significant, particularly given wife's only explanation was that she was saving money to hire an attorney. Wife is seeking modification of a fluid property award that is comparable to a maintenance award. Hence, although Vermont law does not allow the family court to "modify the property disposition aspects of a divorce decree absent circumstances, such as fraud or coercion, that would warrant relief from a judgment generally," *Boisselle v. Boisselle*, 162 Vt. 240, 242, 648 A.2d 388, 389 (1994), wife's motion is analogous to a motion to modify maintenance, in which relief may be applied retroactively no further back than the date the motion was filed. See *Chaker v. Chaker*, 155 Vt. 20, 30, 581 A.2d 737, 742-43 (1990). Given the circumstances, the family court should have limited wife's request for equitable relief under Rule 60(b)(6) to the period after which she filed her motion. We conclude, however, that the court properly gave wife her share of the relatively small lump-sum payment that husband elected to receive immediately in 1997 rather than to defer until a later time when wife would have been entitled to a share under the parties' agreement.

¶ 15. We recognize that wife's attorney drafted the amended agreement, and that husband's receipt of benefits before age sixty did not reduce the amount of benefits that wife would receive after husband reached sixty. Nevertheless, the court acted within its discretion in determining that awarding wife a portion of husband's early retirement benefits would further the interests of justice, given that the IBM pension was the parties' principal marital asset in a long-term marriage, and that the parties plainly intended to share that entire asset. Finally, we reject wife's suggestion that because husband failed to claim any error in the remedy chosen by the court,

the remedy provision cannot be disturbed. As noted, we conclude that the family court abused its discretion by granting relief retroactive to the date husband began receiving the core monthly benefits.

¶ 16. Husband also argues that the court abused its discretion by awarding wife attorney's fees based on his fault rather than the parties' financial circumstances. We find no merit to this argument. As husband acknowledges, he stipulated to the reasonableness and necessity of wife's attorney's fees. He also recognized that wife had minimal financial resources, and that he was able to bear her expenses. Indeed, the discrepancy between husband's and wife's financial resources is manifest in the record. Accordingly, the court acted within its discretion in awarding wife attorney's fees.

¶ 17. On cross-appeal, wife argues that the family court erred by ruling that she was entitled to forty-nine percent, as opposed to sixty-four percent, of husband's retirement benefits under the formula contained in the amended final order and QDRO. She reasons that the numerator of the fraction in the formula refers to "age of separation" rather than age of "retirement," and that husband's age of separation from IBM was forty-seven, although he did not officially retire and begin to receive benefits until age fifty-two. We find this argument unpersuasive. There is no indication that the parties' intended the phrase "age of separation" to mean anything other than the age at which husband retired from IBM. This interpretation is fair in this instance because husband's early retirement program treated his separation from IBM as a leave of absence, and the five years between 1992 and 1997 counted towards his years of service at IBM.

*The Chittenden Family Court's December 13, 2001, February 21, 2002, and*

*August 19, 2002, orders are affirmed in all respects, except that wife is entitled to her share of only those core monthly benefits that husband received on September 1, 2000, and thereafter. Wife is entitled, however, to one-half of the lump-sum personal retirement provision payment husband elected to receive when he retired in 1997 rather than to defer until later.*