NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 66

Nos. 2020-224 & 2020-322

In re C.L., Juvenile

Supreme Court

On Appeal from
Superior Court, Rutland Unit,
Family Division

May Term, 2021

David A. Barra, J.

Michael Rose, St. Albans, for Appellant Mother.

Sarah R. Star of Sarah R. Star, P.C., Middlebury, for Appellant Juvenile.

Thomas J. Donovan, Jr., Attorney General, Rachel E. Smith, Deputy Solicitor General, Montpelier, and Martha E. Csala, Assistant Attorney General, Waterbury, for Appellee Department for Children and Families.

Matthew Valerio, Defender General, Marshall Pahl, Deputy Defender General and Juvenile Defender, and Rebecca Turner, Appellate Defender, Montpelier, for Amicus Curiae Office of the Defender General.


PRESENT: Reiber, C.J., Robinson, Carroll and Cohen, JJ., and Zonay, Supr. J.,
Specially Assigned


¶ 1.    **ROBINSON, J.**  Mother appeals the decision of the family division of the superior court terminating her parental rights to her five-year-old son C.L.  C.L. separately appeals the court's decision denying his post-judgment motions to vacate the termination order pursuant to 33 V.S.A. § 5113(b) and Vermont Rule of Civil Procedure 60(b), to allow his attorney to withdraw, and to order contact with mother.  We consolidated the appeals for review, and now affirm.

¶ 2.    We consider in turn a procedural dispute that we deferred until resolution of the case, mother's appeal of the merits, and C.L.'s appeal of the trial court's denial of his post-judgment motion.

### I.  C.L.'s Request to Join Mother's Brief

¶ 3.    Before considering the merits of mother's appeal of the termination of her parental rights, we address a procedural issue that arose during the briefing phase of this appeal: whether C.L. may join mother's brief where he did not oppose termination below and did not file his own notice of appeal from the termination order.  After mother had filed her principal brief, C.L. notified this Court that he wanted to join mother's brief opposing the termination order.  The Department for Children and Families (DCF) objected.  After receiving briefing from the parties and amicus curiae, we issued an order stating that the issue would be decided with the merits of mother's appeal.

¶ 4.    We conclude that C.L. was not required to file a notice of appeal in these circumstances.  The general rule is that an appellee who does not file a notice of appeal is not entitled to seek reversal or modification of the judgment below.  In re Snyder Grp., Inc., 2020 VT 15, ¶ 7, __ Vt. __, 233 A.3d 1077 (striking briefs filed by non-appealing party that sought to argue against judgment below); Huddleston v. Univ. of Vt., 168 Vt. 249, 255, 719 A.2d 415, 419 (1998) (explaining that "[a]n appellee seeking to challenge aspects of a trial court's decision must file a timely cross-appeal"); see also V.R.A.P. 4(a)(6) (stating that if one party files timely notice of appeal, any other party may file appeal within fourteen days).  " 'Once one party has filed a notice of appeal, other parties who have not joined in that initial notice of appeal must file their own notices of appeal if they wish to attack all or a portion of the judgment below and to be relieved of the consequences thereof.' "  Snyder Grp., 2020 VT 15, ¶ 7 (quoting 16A C. Wright et al., Federal Practice and Procedure § 3950.7, at 499 (5th ed. 2019)) (alteration omitted).  The purpose of the cross-appeal rule is to ensure the orderly presentation of the appeal and to provide fair notice to

opposing parties of the issues that will be raised. See El Paso Nat. Gas Co. v. Neztsosie, 526 U.S. 473, 480 (1999) (describing cross-appeal rule as "firmly entrenched rule" that advances "institutional interests in fair notice and repose"). This rule is applicable to all types of appeals, including appeals from juvenile proceedings.

¶ 5. We distinguish an appellee's effort to advance, by brief or oral argument, independent grounds to reverse or modify the trial court's judgment from the scenario in which an appellee does not contest, or even affirmatively agrees with, one or more arguments for reversal advanced by an appellant. In the latter cases, the appellee is not seeking to invoke the Court's jurisdiction to raise an argument not otherwise before the Court. Nor is the appellee injecting new argument in favor of reversal at an untimely stage in the briefing process—a practice that would disadvantage other appellees who have filed their briefs arguing for affirmance without advance knowledge of newly raised arguments for reversal in a fellow appellee's brief. Other appellees, including the State in connection with appeals of criminal convictions, routinely concede error and acknowledge the propriety of the appellants' arguments for reversal where warranted by the record and the law. Doing so, without proactively seeking to advance an appellee's own arguments for reversal through briefing or oral argument, does not constitute a "cross-appeal" for which the appellee is required to file a notice of appeal. Accordingly, a juvenile, like any non-appealing party, may opt not to contest the appellant's arguments in a given case.[1] Juveniles who do not seek to advance separate arguments challenging the judgment below may simply notify the Court

---

[1] DCF argues that C.L. does not have standing to challenge the termination order because his guardian ad litem supported termination at the hearing and his attorney did not indicate a different position. As we have explained, "a person seeking to appeal a decision must have a legal interest in the decree that may be enlarged or diminished." In re M.C., 156 Vt. 642, 642, 590 A.2d 882, 882 (1991) (mem.). The child in a termination proceeding has a legal relationship with the parent that is extinguished by a termination order, and therefore plainly has standing to challenge the order if he disagrees with the outcome. This is not a case where a party who prevailed below seeks to appeal merely to correct "passages in the court's opinion that displease him." Abbs v. Sullivan, 963 F.2d 918, 924 (7th Cir. 1992).

3

and remaining parties of their support for part or all of appellant's position within the time period the juvenile's brief would have been due.

¶ 6.     Here, C.L. requested simply to "join" mother's brief, that is, to indicate his support for her arguments.  Because C.L. did not seek to independently brief any argument for reversal and did not seek to argue as an appellee for reversal of an aspect of the trial court's judgment, we conclude that the Court's permission was not required.

## II.  Mother's Appeal of the Termination of Her Parental Rights

¶ 7.     Following a three-day evidentiary hearing in June 2020, the family court issued a decision containing the following findings in its order terminating mother's parental rights. Mother and father have three children together.  The youngest child, C.L., who is the subject of this appeal, was born in January 2016.  Father voluntarily relinquished his parental rights to C.L. at the termination hearing and is not a party to this appeal.

¶ 8.     In April 2017, DCF filed petitions alleging that C.L. and his siblings were children in need of care or supervision (CHINS) after C.L.'s siblings, then aged five and three, were repeatedly found unattended at various locations in downtown Rutland.  The court issued an emergency order placing C.L. and his siblings in DCF custody.  At the temporary care hearing, the court issued a conditional custody order returning the children to parents' care.  That order was revoked in July 2017 due to violence in the home and parents' failure to cooperate with DCF or attend appointments.  The children were returned to DCF custody and were placed together in a foster home.

¶ 9.     Parents stipulated to the merits of the CHINS petitions in October 2017.  The court adopted a case plan in December 2017 that included concurrent goals of reunification with either parent or adoption by April 2018.  The case plan called for mother to cooperate respectfully with DCF, attend visits with the children, engage with parenting lessons, attend medical appointments, participate in domestic violence counseling, and find employment and safe and stable housing.

4

¶ 10. Mother had no contact with C.L. from July to September 2017. She was living in New York at the time. In the fall of 2017, her contact with C.L. was sporadic. Mother completed a parenting class in New York and began to engage in visitation supported by Easterseals. She returned to live in Vermont in April 2018. She was employed but did not have secure housing. DCF completed a family reunification voucher for mother but it was denied due to mother's eviction history and bad credit.

¶ 11. In September 2018, a forensic psychologist conducted a parenting capacity evaluation of mother. He noted that mother had regularly attended appointments and appeared to be trying to demonstrate to DCF that she could be a fit parent. He concluded, however, that mother had a significant history of childhood trauma that would likely interfere with her ability to be a regulated and attuned parent. In his opinion, she could not manage all three children, but could manage C.L. alone with ample support including mental health treatment and parenting education. Such support would not be enough, however, if mother did not actively engage in services. The psychologist opined that mother should be given six months to make progress toward reunification.

¶ 12. In October 2018 and in May or June of 2019, DCF offered to provide comprehensive services to mother through the Lund Family Center. Mother declined.

¶ 13. In January 2019, DCF moved to terminate mother's parental rights to C.L. Later that month, mother voluntarily relinquished her parental rights to C.L.'s siblings. C.L.'s siblings were subsequently adopted by the foster family with whom they and C.L. had lived since 2017.

¶ 14. Mother had one visit with C.L. in January 2019 and one in February 2019. She began to attend visits more consistently in March 2019. Mother was consistently employed throughout the CHINS proceeding. However, she did not have stable housing while the case was pending and was homeless at the time of the termination hearing. Mother attended an anger management group but did not consistently attend individual counseling. The court found that mother had not engaged in therapy to deal with her own trauma so that she could effectively parent

5

C.L. Mother's therapist, whom mother had stopped seeing at the time of the hearing, estimated that mother would need six months of active, engaged therapy to address attachment issues necessary to successfully parent C.L.

¶ 15. Mother underwent a voluntary evaluation by another forensic psychologist in June 2020. Mother told the psychologist that she did not think she would gain much from individual counseling. The psychologist noted that mother had been resistant to engaging in the case plan until recently, suggesting a lack of recognition that she needed to take steps for C.L.'s benefit. The psychologist opined that mother could not provide for C.L.'s needs currently, but that reunification was possible if mother engaged fully in services for three months. The psychologist stated that mother would need to develop a true understanding of domestic violence and the trauma she and her children had endured, attend every visit with C.L. and his service providers and be fully engaged during these visits, and secure stable housing. The court found that mother had not demonstrated an ability to do any of these things during the three years that C.L. had been in DCF custody.

¶ 16. The court found that that mother had stagnated in her parenting ability, justifying modification of the previous disposition order. It explained that mother had not seriously engaged in services until very late in the case and had been sporadic and inconsistent in visiting C.L. and participating in his medical and mental health treatment.

¶ 17. The court then assessed the factors set forth in 33 V.S.A. § 5114(a). The court found that C.L. had a strong bond with his foster family, who wished to adopt him, and was well adjusted to his foster home and community. It found that mother did not play any significant role in meeting C.L.'s emotional, physical, medical, or educational needs, and would not be able to resume her parental duties within a reasonable period of time. The court therefore concluded that termination of mother's parental rights was in C.L.'s best interests. Mother timely appealed the termination order.

¶ 18. On appeal, mother challenges the court's conclusion that she was unlikely to be able to resume parenting within a reasonable time. When deciding whether termination of parental rights is in a child's best interests, the family court must consider four statutory factors, the most important of which is "the likelihood that the parent will be able to resume or assume parental duties within a reasonable period of time." 33 V.S.A. § 5114(a)(3); In re M.B., 162 Vt. 229, 235, 647 A.2d 1001, 1004 (1994). "The reasonableness of the time period is measured from the perspective of the child's needs, and may take account of the child's young age or special needs." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29, 71 A.3d 1142 (citation omitted). "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." In re D.S., 2014 VT 38, ¶ 22, 196 Vt. 325, 97 A.3d 882 (quotation omitted).

¶ 19. In this case, the court found that despite the clear recommendations of DCF and the psychologists, mother had failed to put in the work necessary to improve her parenting ability and address the conditions that led to the CHINS proceeding being filed in the first place. At the time of the hearing, she did not play a significant role in meeting C.L.'s needs. She still lacked safe and stable housing and had not demonstrated an ability to care for C.L. without supervision. Although she had recently begun to attend visits more consistently and had begun to engage with counseling and parenting classes, she had not sufficiently improved her ability to care for C.L. during the three years that he had been in DCF custody. Mother's own psychologist testified that mother would need to show at least three months of steady progress to demonstrate that she was ready for reunification. Meanwhile, C.L. needed stability and permanency as soon as possible. These findings are supported by the record, and mother does not challenge them. The findings in turn support the court's conclusion that mother was not able to resume parenting C.L. within a reasonable amount of time.

¶ 20. Mother argues that the court's assessment of the resumption-of-parental-duties factor was erroneous because the court failed to make findings regarding a material fact, namely, the foster mother's pregnancy at the time of the termination hearing. According to mother, the first forensic psychologist suggested that the addition of a fifth child to the foster home might render it unsuitable for C.L. Mother argues that because C.L.'s placement could be uncertain and the evidence showed that mother could make sufficient progress toward reunification within a period of months, the court should have found that she could resume parenting within a reasonable time.

¶ 21. "Where a finding of fact is essential to the disposition of the cause, the court must make that finding as a matter of law." Cota v. Town Sch. Dist. of Starksboro, 144 Vt. 633, 635, 481 A.2d 1267, 1268 (1984). Even if we accepted that foster mother's pregnancy and its effect on the suitability of the foster home could have a bearing on the amount of reasonable time for reunification, a question we need not decide, we would reject mother's argument on this record. The court considered the child's relationship with his foster family and adjustment to their home and community in conducting the best-interests analysis and found that the foster family had a strong relationship with C.L. 33 V.S.A. § 5114(a)(1)-(2). C.L. was close to his siblings, whom the foster family had adopted, and living with his siblings had a positive influence on C.L. C.L. had a good relationship with the foster family's biological daughter and extended family. The foster family consistently provided for C.L.'s developmental and medical needs and supported his education. At the time of the termination hearing, they were willing to adopt C.L. These findings are not challenged by mother and are supported by the record.

¶ 22. Although mother argues that the foster mother's pregnancy could alter the court's assessment of the stability of the placement, the evidence presented on this point was hardly conclusive. When mother's attorney asked the first psychologist at trial about his September 2018 report, in which he expressed concern that the foster family might find it difficult to manage C.L.

8

and his two siblings in addition to their own newborn, the psychologist testified that he had wanted to draw attention to the issue, but that it was not a "dealbreaker." When asked if the foster mother's pregnancy would cause him concern about the foster family adopting C.L., the psychologist stated, "I don't know if concern is the right word, but I—I would certainly want more information." He continued, "it's a concern for all children, you know, at some point, depending on how big a family gets. You know, some people can manage ten kids incredibly well; some can't manage one." The court was not obligated to draw an inference in favor of mother based on these vague concerns. See Fairbanks v. Frank, 107 Vt. 45, 49, 176 A. 294, 296 (1935) (explaining that trial court may draw inferences of fact that are reasonably warranted by evidence). And this testimony about vague and general concerns was not sufficiently pointed as to require a specific finding. Cf. Harris v. Harris, 149 Vt. 410, 420, 546 A.2d 208, 215 (1988) (reversing property division in divorce order because family court failed to make specific findings regarding value of personal property, despite receiving evidence indicating that value of such property was significant).

¶ 23. As discussed above, there was ample evidence to support the court's conclusion that mother would not be able to resume parental duties within a reasonable time. While mother expresses concern that the foster family's new child could affect their willingness or ability to serve as a placement for C.L., "[j]uvenile proceedings often involve difficult predictions about the future. Best judgment, rather than perfection, is our standard." In re J.D., 165 Vt. 440, 444-45, 685 A.2d 1095, 1099 (1996). We therefore decline to disturb the court's judgment terminating mother's parental rights.

### III. C.L.'s Appeal of Post-Termination Orders

¶ 24. After the trial court's termination decision, C.L. filed several post-termination motions, which the trial court denied. As noted above, C.L. did not present evidence opposing termination or appeal the termination order. However, while mother's appeal from that order was pending, C.L.'s trial attorney moved to withdraw from representing him, asserting that an intern

9

in the attorney's office had observed bruising on C.L. and reported it to DCF, making the intern a potential witness in further proceedings. C.L., through the same attorney, then moved to vacate the termination order pursuant to 33 V.S.A. § 5113(a) and Vermont Rule of Civil Procedure 60(b), or alternatively pursuant to 33 V.S.A. § 5113(b). In the motion, C.L. argued that he was not doing well in his foster placement and that DCF was investigating allegations of abuse. C.L. requested contact with mother while the motion to vacate was litigated. By stipulation of the parties, we placed mother's appeal on waiting status and remanded the matter for the family court to decide the motion to vacate.[2]

¶ 25. The family court denied C.L.'s motions. It explained that although it had considered the availability of a pre-adoptive home, that factor was not central to its conclusions in the termination order. The court held that, in any event, the termination order could not be set aside due to changed circumstances because 33 V.S.A. § 5113(b) does not apply to termination orders. The court found that C.L.'s motion did not present any of the grounds for relief listed in Rule 60(b). The court denied the motion for parent-child contact, concluding that contact was not in C.L.'s best interests. It also denied C.L.'s attorney's motion to withdraw, reasoning that the issue of bruising was not a contested issue in the case before it.

¶ 26. C.L. appealed. He also filed a motion to reconsider in which he argued that the investigation into the bruising was ongoing, C.L.'s attorney was a factual witness to the bruising, and there may have been facts in existence prior to the termination order which should have been presented to the court for consideration. He described the original motion to vacate as a "placeholder" motion to inform the court why new counsel and a hearing were required. DCF opposed the motion, stating that its investigation into the bruising had concluded and the

---

[2] We disagree with C.L.'s claim that DCF's stipulation to the remand amounted to a tacit concession by DCF that the family court could grant relief from the termination order under § 5113(b). DCF consistently argued below and before this Court that § 5113(b) does not apply to termination orders.

allegations were unsubstantiated, and C.L. had not identified any evidence that was not presented to the court in the termination hearing. The family court denied the motion to reconsider.

¶ 27. On appeal, C.L. argues that the family court erred in concluding that it could not set aside the termination order due to changed circumstances because 33 V.S.A. § 5113(b) applies when a termination order is on direct appeal, and the allegations of abuse were a substantial change in circumstances requiring a hearing. Alternatively, he argues that if § 5113(b) does not apply to the termination order, the court abused its discretion in denying the Rule 60(b) motion filed pursuant to § 5113(a). He argues that the motion was expressly intended to be a "placeholder," and that the family court should have allowed his attorney to withdraw and his new attorney to file a proper Rule 60 motion. Finally, he argues that the court abused its discretion in denying the motion for parent-child contact. We conclude that: the court acted within its discretion in denying C.L.'s motion to vacate the termination order pursuant to 33 V.S.A. § 5113(a) and Rule 60; 33 V.S.A. § 5113(b) does not apply to termination orders; C.L.'s appeal of the denial of his attorney's request to withdraw is moot; and the court acted within its discretion in denying contact with mother.

A. Motion Under § 5113(a) and Rule 60

¶ 28. We begin by addressing C.L.'s argument that the family court abused its discretion in denying his motion to vacate the termination order pursuant to Vermont Rule of Civil Procedure 60(b). Rule 60, which applies to orders in juvenile proceedings under 33 V.S.A. § 5113(a), permits the court to set aside an order for six enumerated reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied or released; and (6) "any other reason justifying relief from the judgment." V.R.C.P. 60(b); see 33 V.S.A. § 5113(a) ("An order of the Court may be set aside in accordance with Rule 60 of the Vermont Rules of Civil Procedure."); V.R.F.P. 2(a) (stating Rule 60 applies to CHINS proceedings). A motion for relief from judgment pursuant to Rule 60(b) "is

11

addressed to the discretion of the trial court and is not subject to appellate review unless it clearly and affirmatively appears from the record that such discretion was withheld or otherwise abused." Richwagen v. Richwagen, 153 Vt. 1, 3-4, 568 A.2d 419, 420 (1989) (quotation omitted).

¶ 29. We see no abuse of discretion in the court's decision. In his motion to vacate, C.L. argued simply that the termination order "was based heavily on the availability of a pre-adoptive home," and that the allegedly changed circumstances in that home, which called into question whether it would become an adoptive home, justified vacating the order. In his motion to reconsider, he claimed that "there may have been facts in existence . . . which should have been discovered and presented to the court for consideration," and that "[t]here is currently an ongoing investigation which may reveal that one of the listed grounds in Rule 60 is applicable." The court properly denied relief under Rule 60(b) because C.L. did not assert any of the grounds for relief listed in the rule.

¶ 30. On appeal, C.L. claims that he was entitled to relief on the basis of newly discovered evidence that he could not have discovered in time for trial, namely, evidence that he was not flourishing in his foster home and had bruises. This alleged evidence does not provide C.L. with a basis for relief under V.R.C.P. 60(b)(2) because there is no evidence that it existed at the time of the termination order. See Tobin v. Hershey, 174 Vt. 634, 638, 820 A.2d 982, 986–87 (2002) (mem.) ("[Rule] 60(b)(2) generally applies when the parties are unaware of evidence existing at the time of the judgment and, through no fault of their own, discover that evidence only after the judgment." (emphasis added)); 11 C. Wright et al., Federal Practice and Procedure § 2859 (3d ed. 2021) (explaining that motions on the ground of newly discovered evidence under either Rule 59 or Rule 60(b)(2) require evidence to have existed at time of trial).

¶ 31. We also reject C.L.'s argument that regardless of the infirmities of his Rule 60 motion, the court committed reversible error in failing to hold a hearing on the motion as required by 33 V.S.A. § 5113(c). That provision states that "[a]ny order under this section shall be made

12

after notice and hearing," unless the parties stipulate otherwise. 33 V.S.A. § 5113(c) (emphasis added). We agree that when a party seeks relief in a CHINS proceeding pursuant to § 5113(a) and Rule 60, or because of changed circumstances under § 5113(b), the court ordinarily must hold a hearing. Here, however, no hearing was required for C.L.'s § 5113(b) motion because that provision is inapplicable to termination orders. See infra, part B. As for C.L.'s Rule 60 motion, the court indicated that even if it accepted as true the evidence C.L. proffered regarding the current circumstances in the foster home, that evidence would not impact its termination decision, which was based on mother's inability to resume parental duties within a reasonable time. The court had discretion to decide as a threshold matter whether there was a material dispute of fact that required a hearing to resolve. Cf. Blanchard v. Blanchard, 149 Vt. 534, 537, 546 A.2d 1370, 1372-73 (1988) (stating family court may deny Rule 60(b) motion without hearing when it finds motion totally lacking in merit). Having concluded that there was not, the court acted within its discretion in denying C.L.'s Rule 60 motion without a hearing.

### B. 33 V.S.A. § 5113(b)

¶ 32. We next consider whether the family court properly denied C.L.'s motion to modify the termination order based on changed circumstances under 33 V.S.A. § 5113(b). Based on previous decisions of this Court, the court determined that § 5113(b) does not apply to termination orders. Accordingly, it did not hold a hearing on the issue or assess whether there had been a substantial change in circumstances that would justify modifying or vacating the order. Because our case law clearly establishes that § 5113(b) does not apply to termination orders, and C.L.'s arguments to distinguish this case or overrule that case law are unpersuasive, we affirm.

¶ 33. Section 5113(b) of Title 33 states that the court "may amend, modify, set aside, or vacate an order on the grounds that a change in circumstances requires such action to serve the best interests of the child." We first addressed the applicability of § 5113(b) to termination orders in In re A.W., 2013 VT 107, 195 Vt. 226, 87 A.3d 508. In A.W., the family court terminated a

13

father's parental rights to his two children. While his direct appeal of the termination order was pending, the father moved to modify the order based on changed circumstances, arguing that his parenting ability had improved. Two days after the father filed his motion, we issued a decision affirming the termination order, and the family court denied the motion based on this Court's affirmance. The father moved to reconsider, and the court again denied the motion, concluding that modification was not in the children's best interests. We affirmed, holding that § 5113(b) did not apply to termination orders. Id. ¶ 12. We reasoned that although the plain language of the statute and previous case law suggested that any order, including a termination order, could be modified based on changed circumstances, this language had to be interpreted in the context of the Legislature's stated policy concern for timely permanency in juvenile proceedings. Id. ¶ 10. We noted that a termination order is unique in child-neglect proceedings because it is permanent and is the only type of order in which the court must make findings by clear and convincing evidence. Id. ¶ 11. We concluded that permitting modification of termination orders based on changed circumstances "would indefinitely expand the termination process and abolish the intended permanency of" such orders, undermining the legislative goal of timely permanency. Id. ¶ 12. We therefore held that "§ 5113(b) does not apply to an order terminating parental rights." Id.

¶ 34. We expressly reaffirmed this conclusion in In re P.K., 2017 VT 3, ¶ 15, 204 Vt. 102, 164 A.3d 665. In that case, the mother voluntarily relinquished her parental rights and entered into a post-adoption contact agreement with the child's paternal grandmother, with whom the child had been placed by DCF. After DCF removed the child from the paternal grandmother's home and placed her with another family, the mother moved to set aside the termination order. The mother argued that A.W. was distinguishable because in her case, the parties had agreed at the time she relinquished her rights that her continued contact with the child was in the child's best interests. We disagreed, concluding that our reasoning in A.W. applied to all termination orders, regardless of the asserted change in circumstances. Id. ¶ 16. We again emphasized the legislative

14

purpose of ensuring timely permanency for children and the uniqueness of termination orders, and reiterated that permitting modification of such orders on the basis of changed circumstances would prevent them from ever truly becoming final. Id.

¶ 35.   C.L. argues that our holdings in A.W. and P.K. do not apply where, as here, modification of the termination order was sought while a direct appeal of the termination order was pending.  C.L. relies on our recent decision in W.H. v. Department for Children and Families, in which we stated that a Vermont custody proceeding had not been stayed or terminated for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) where the family division had granted the State's petition to terminate parental rights and the parents' appeal was pending.  2020 VT 104, ¶ 19, __ Vt. __, 251 A.3d 41.  We noted that "while the appeal was pending, the family division retained jurisdiction to modify or enforce its orders," citing Vermont Rule of Appellate Procedure 8(c).  Id.  That rule provides that a juvenile disposition order may be stayed pending appeal and that "the superior court retains jurisdiction to modify or vacate its order under 33 V.S.A. § 5113."  V.R.A.P. 8(c); see also V.R.F.P. 12(d)(2)(C) (stating same).  C.L. argues that because a termination order is a disposition order, see 33 V.S.A. § 5318(a), W.H. and Rule 8(c) permit the family court to modify a termination order based on changed circumstances while that order is on direct appeal.

¶ 36.   C.L. reads too much significance into the quoted language from W.H.  In that case, we considered whether Vermont had to recognize an Alabama order granting the plaintiff sole custody of a child who lived in Vermont and was in DCF custody pursuant to court order.  We concluded that Vermont was not required to register the order under the UCCJEA because when the Alabama suit was filed, the child was already the subject of a Vermont custody proceeding, Vermont's exercise of jurisdiction was consistent with the UCCJEA, and the Vermont proceeding had not been stayed or terminated for purposes of that statute.  W.H., 2020 VT 104, ¶ 15.  Viewing the quoted language in context, it is clear that we were focused on whether the Vermont family

court continued to have jurisdiction over the proceeding in general. We did not mention our holdings in A.W. and P.K., and we did not explicitly or implicitly overrule those holdings. Rather, we were simply recognizing the general principle that the family court retains jurisdiction over a child-custody proceeding while an appeal was pending to issue or modify orders as permitted by statute. We did not purport to state what types of orders could be modified or vacated. Id. ¶ 19 (stating only that "the family division retained jurisdiction to modify or enforce its orders").

¶ 37. C.L. argues that the termination order is not "final" until the direct appeal concludes, and therefore should be subject to modification based on changed circumstances to serve the child's best interests. Although there may be good countervailing policy arguments for permitting parties to seek to modify termination orders where circumstances change significantly after termination and while an appeal is pending, we have consistently interpreted § 5113(b) to be inapplicable to termination orders due to their unique nature and the Legislature's stated goal of timely permanency for children in juvenile proceedings. See In re A.W., 2013 VT 107, ¶ 12. These concerns exist regardless of the timing or the basis for the motion. See id.; In re P.K., 2017 VT 3, ¶ 17 (explaining that holding of A.W. "is generally applicable to all termination orders, regardless of the basis for the alleged changed circumstances"). C.L. offers no persuasive principled basis for us to depart from our previous interpretations of the statute in A.W. and P.K.[3] Consistent with these decisions, we again reaffirm that § 5113(b) does not apply to a termination order, even if that order is currently the subject of an appeal. The family court therefore did not err in declining to hold a hearing on C.L.'s motion to vacate the termination order under § 5113(b).

¶ 38. Contrary to C.L.'s argument, our conclusion does not render V.R.A.P. 8(c) or its counterpart in the family rules, V.R.F.P. 12(d)(2)(C), superfluous. Each of these rules states that

---

[3] We note that adopting C.L.'s view that termination orders can be modified pursuant to § 5113(b) while on direct appeal would require us to not just distinguish, but to directly overrule A.W., because in that case the motion to modify was filed while the termination order was on direct appeal. C.L. does not resolve this conflict in his arguments.

16

when an appeal has been taken in a juvenile case, the family court "retains jurisdiction to modify or vacate its order under § 5113." V.R.A.P. 8(c); V.R.F.P. 12(d)(2)(C). Although we have held that termination orders may not be modified based on changed circumstances under § 5113(b), a termination order is not the only kind of order that can be appealed in a juvenile case. Other types of disposition orders are subject to modification pending appeal under these rules. See 33 V.S.A. § 5318(a) (listing types of disposition orders). Moreover, these rules also permit the court to grant relief under Rule 60, even from a termination order, while an appeal is pending, as permitted by § 5113(a). See In re C.L.S., 2021 VT 25, ¶ 22, __ Vt. __, 253 A.3d 443 (explaining that party could file Rule 60(b) motion to vacate termination order at any time before child was adopted, including while order was on direct appeal).

¶ 39. C.L. argues that our interpretation of § 5113(b) will leave his future wellbeing entirely within DCF's discretion and limit the family court's oversight over placements that are harmful or disruptive. However, the statutory scheme provides several alternative avenues to a child in DCF custody after termination. Until a child is adopted, the family court is required to review the case at regularly scheduled permanency hearings, 33 V.S.A. § 5321, and may issue protective orders if necessary, id. § 5115. Prior to adoption, the child or any other party also may seek relief under Rule 60. See In re C.L.S., 2021 VT 25, ¶ 15. If adoption does not occur within three years, the child may file a petition for reinstatement of parental rights. 33 V.S.A. § 5125. C.L. is not left without a judicial remedy.

¶ 40. For the above reasons, we affirm the court's holding that the termination order was not subject to modification based on changed circumstances under § 5113(b). We therefore need not address whether such circumstances existed in this case.

## C. Motion to Withdraw

¶ 41. C.L. argues that he was unable to file a meritorious Rule 60 motion because the family court improperly denied his attorney's motion to withdraw. The attorney moved for

permission for herself and her office to withdraw on the basis that the attorney-in-training who had been representing C.L. under her supervision was likely to be a witness regarding the bruising she observed on C.L.'s body, which would likely be a contested issue in a hearing on the motion to vacate the termination order. See V.R.Pr.C. 3.7(a) (prohibiting lawyer from acting as both advocate and witness on contested issue); V.R.F.P. 15(f) (stating that family court may permit assigned counsel in CHINS case to withdraw based on conflict of interest or other good cause shown). The court denied the motion to withdraw because, having concluded that C.L. was not entitled to relief under Rule 60 or § 5113(b), there would not be any proceeding in which the attorney would be a witness regarding a contested issue. C.L. argues that the court should have granted the motion, and that he was prejudiced by its failure to do so because another non-conflicted attorney might have discovered missing evidence or pursued an ineffective-assistance claim, which his trial attorney could not effectively do.

¶ 42. We conclude that this issue is moot. After C.L. filed his appeal, the Defender General appointed a replacement attorney to represent him pursuant to 13 V.S.A. § 5274. C.L. has therefore secured the relief he was seeking. Assuming a meritorious Rule 60 claim exists, his new attorney may pursue such claim as long as the family court retains jurisdiction over the matter. See In re C.L.S., 2021 VT 25, ¶ 12 (explaining that Rule 60 relief is no longer available once family court's statutory jurisdiction over CHINS proceeding ends).

D.  Motion for Parent-Child Contact

¶ 43. C.L.'s final argument is that the family court "abandoned" its discretion when it denied his post-termination motion for contact with mother. This claim lacks merit.

¶ 44. Once the court terminates a parent's residual parental rights and responsibilities, the parent no longer has the right to contact with the child. See 33 V.S.A. § 5318(a)(5) (stating that termination order transfers legal custody and all residual parental rights and responsibilities to DCF); id. § 5102(26) (defining "residual parental rights and responsibilities" to include right to

18

reasonable contact with child); see also In re A.D.T., 174 Vt. 369, 374, 817 A.2d 20, 24 (2002) (noting that upon termination, DCF "has no obligation to include that parent in further case planning for the child, allow visitation, or make any efforts to reunify the child with the parent"). A parent may request that the court stay the termination order and allow continued contact while an appeal is taken, but no such request was made here. See V.R.F.P. 12(a)(2)(C), (d) (providing that juvenile disposition orders, including termination orders, are not automatically stayed pending appeal); In re D.P., 147 Vt. 26, 33, 510 A.2d 967, 971 (1986) (holding that court has discretion to stay termination order and allow continued contact pending appeal).

¶ 45.    C.L. argues that the court nevertheless retained discretion to order contact with mother pursuant to 33 V.S.A. § 5319(e), which provides that "[u]pon motion of the child's attorney, the [c]ourt may also order contact between the child and the child's siblings, an adult relative with whom the child has a significant relationship, or an adult friend with whom the child has a significant relationship." C.L. argues that the family court withheld its discretion by denying contact simply because mother's rights had been terminated, without considering his request under § 5319(e).

¶ 46.    Assuming for the sake of argument that § 5319(e) permits the court to order contact between a child and a parent whose rights have been terminated, the record shows that the court did exercise its discretion in considering C.L.'s request. Cf. In re D.P., 147 Vt. at 33, 510 A.2d at 971 (noting that continued visitation after termination may be harmful to child; decision whether to permit such visitation is discretionary). The court stated that "[i]n light of the termination order, [C.L.]'s visitation with [mother] is not in his best interests. The motion for parent child contact raises no compelling reason why such contact should occur." Although brief, this statement demonstrates that the court did not deny contact simply because mother's parental rights had been terminated. As the court noted, C.L.'s motion asserted only that C.L. and mother had a good relationship and that ongoing visitation pending the resolution of C.L.'s motion to vacate was in

C.L.'s best interests.  The court was evidently unpersuaded, referring to the termination order, which detailed mother's sporadic attendance at visitation, her failure to progress beyond supervised visitation, and C.L.'s need for permanency.  Under these circumstances, we cannot say that the court abused its discretion in denying the request.

Affirmed.

FOR THE COURT:

_____

Associate Justice