VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     23-AP-366



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2024

| | |
|---|---|
| In re O.L., Juvenile<br>(K.W., Mother\* & E.L., Father\*) | APPEALED FROM:<br><br>Superior Court, Addison Unit,<br>Family Division<br>CASE NO. 22-JV-00413<br>Trial Judge: David R. Fenster |

In the above-entitled cause, the Clerk will enter:

Mother and father appeal the termination of their parental rights in their daughter O.L., born in December 2017.  We affirm.

In March 2022, the State filed a petition alleging that four-year-old O.L. was a child in need of care or supervision (CHINS).  The family division placed her in the custody of the Department for Children and Families (DCF) under an emergency care order, and custody was continued with DCF following a temporary care hearing.  In April 2022, the court found that O.L. was CHINS at the time of the State's petition based on parents' stipulation that their active substance abuse, lack of stable housing, and difficulty providing safe care for O.L. placed her at risk of harm.

In a July 2022 disposition order, the court adopted a permanency goal of reunification with both parents by November 2022.*  The disposition case plan called for parents to, among other things, immediately engage in substance-abuse treatment.

The State filed a petition to terminate parents' rights in November 2022.  After a hearing on the petition held over two days in April and June 2023, the court issued a written decision containing the following factual findings.

The primary concern in the case was parents' substance abuse and the impact it had on their ability to provide appropriate care for O.L.  Before O.L. entered DCF custody, father's

---

 * The disposition case plan including this target reunification date was filed in May 2022. Because parents failed to appear at the initial disposition hearing later the same month, the court delayed adoption of the case plan to allow them an opportunity to file objections.  No such objections were filed.

family members were providing a significant amount of her daily care, including supervising parents' care of O.L. to maintain her safety.

Between March and June of 2022, neither parent engaged in substance-abuse treatment. They were inconsistent in attending visits with O.L. and, when they did attend, they appeared to be under the influence. Between June and October of the same year, parents did not visit O.L. at all and DCF was unable to locate them.

Mother went to Valley Vista in October 2022 but left before completing the treatment program. She was incarcerated in March 2023 and remained so on the first day of the termination hearing the following month. After her release on conditions in May 2023, mother successfully completed the Serenity House program. This marked the first time since the inception of the case that mother actively engaged in substance-abuse treatment other than what may have been enforced through her incarceration.

By the final day of the termination hearing in June 2023, mother was living with family, working, attending counseling, and had a sober coach. She did not sign a release for her counselor to speak with DCF. Although mother was doing well and had a significant support system in place when the hearings concluded, she had only maintained her sobriety in the community for about a month. During that time, she participated in between three and five supervised visits with O.L. These visits went well and were constructive for O.L., who noticed a change in mother. However, mother was just beginning to reestablish her relationship with O.L. after a significant absence from her life.

Father entered Serenity House in fall 2022 but left before completing the program. He was incarcerated during both days of the termination hearing and had not seen O.L. since June 2022. He had yet to actively engage in substance-abuse treatment other than what may have been enforced during his incarceration. Father believed he would soon be released to participate in substance-abuse treatment and then transition to treatment court, but this had not yet transpired.

Both parents had significant unresolved felony and misdemeanor charges. In testifying about the circumstances leading up to the CHINS petition, they continued to minimize both the risks their substance abuse posed to O.L. and the substantial family support they received in caring for her.

O.L. was placed with one of the family members who had been providing this support. When O.L. first came into custody, she was missing several developmental milestones. She subsequently made significant progress and was well-adjusted and thriving in her placement. O.L.'s foster parent was willing to adopt her and supported maintaining a healthy relationship between O.L. and parents.

The family division found a change in circumstances justifying modification of the previous disposition order because, at the time the case plan called for reunification, neither parent had achieved sobriety or had contact with O.L. for approximately five months. The court then weighed the factors set forth in 33 V.S.A. § 5114(a) and concluded that termination of parents' rights was in O.L.'s best interests. Most significantly, it found that O.L. had an immediate need for permanency given her young age and the time she had already spent in DCF custody and that despite parents' recent progress, significant obstacles still prevented them from meeting that need. Among other things, the court noted that parents were in the early stages of sobriety, needed to reestablish relationships with O.L., and had serious unresolved charges which

2

could impact their future ability to parent. It also found that parents' failure to fully acknowledge the risks their substance use posed to O.L. raised significant concerns about their ability to continue following through with the case plan. The court ordered the termination of parents' rights, and this appeal followed.

When the State moves to terminate parental rights after initial disposition, the family division must first consider whether there has been a change of circumstances. See In re M.P., 2019 VT 69, ¶ 24, 211 Vt. 20 (citing 33 V.S.A. § 5113(b)). When this threshold is met, the court goes on to consider whether termination is in the child's best interests using the factors set forth at 33 V.S.A. § 5114(a). In re C.L., 2021 VT 66, ¶ 18, 215 Vt. 341. "[T]he most important of [these factors] is 'the likelihood that the parent will be able to resume or assume parental duties within a reasonable period of time,' " measured from the perspective of the child's needs. Id. (quoting 33 V.S.A. § 5114(a)(3)). Provided that the court applied the appropriate standard, we will not disturb its findings unless they are clearly erroneous, and will affirm its conclusions if supported by those findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

On appeal, neither parent challenges the court's determination that there was a change in circumstances sufficient to modify the initial disposition order. Instead, both argue that the family division erred in concluding that termination of their respective parental rights was in O.L.'s best interests. Mother contends that the court's best-interests analysis was neither forward-looking nor centered on O.L.'s perspective and challenges several of the underlying findings as clearly erroneous. Father argues that the court failed to construe the best-interests factors in accordance with the statutory purpose to preserve the family.

We turn first to mother's argument that several of the court's findings were clearly erroneous. "When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence," and "[w]e leave it to the sound discretion of the family court to determine the credibility of witnesses and to weigh the evidence." In re A.F., 160 Vt. 175, 178 (1993).

First, mother argues that the court erred in finding that the fifteen months O.L. had spent in DCF custody by the conclusion of the termination hearing represented a significant part of her life. However, mother does not challenge the court's finding that O.L. was just over four years old when she was placed in DCF custody and, at the time of the final hearing, was five-and-a-half and had been in custody for over a year. The time O.L. spent in custody therefore represented approximately one-fifth of her young life, and the court did not exceed the scope of its discretion in characterizing this period as significant. Cf. In re C.L., 2021 VT 66, ¶ 18 (noting that reasonableness of period in which parent is likely to be able to resume parental duties "is measured from the perspective of the child's needs, and may take account of the child's young age").

Mother next challenges the court's finding that significant obstacles prevent her from meeting O.L.'s immediate need for permanency. She points to the progress she made prior to the conclusion of the termination hearing and argues that there is no evidence that she could not parent while sober. She also contends that the court's subsidiary findings regarding her need to reestablish a relationship with O.L. and the possible impact of her pending charges are clearly erroneous.

Mother asserts that she and O.L. have a loving relationship which survived their fifteen-month separation and, as a result, the court erred in finding that she and O.L. were just beginning to reestablish a relationship. However, the court's recognition that mother and O.L. love one

3

another did not compel a finding that their relationship was not impacted by mother's period of absence from O.L.'s life. The DCF worker assigned to the case testified that mother was in the very early stages of recovery from a severe addiction and needed time to develop insight into the impact that addiction had on her relationships with others; in her view, mother would need to do "a lot" of work to try to restore a healthy parent-child relationship with O.L. Because the court's finding is supported by the evidence, we will not disturb it on appeal.

Mother also contends that the court's finding that her pending charges could impact her ability to parent was unduly speculative. However, in assessing the likelihood that mother would be able to resume parental duties within a reasonable period, the court was necessarily engaged in a "forward-looking" analysis focused on mother's "prospective ability" to parent O.L. In re N.L., 2019 VT 10, ¶ 9, 209 Vt. 450. As we have long recognized, juvenile proceedings often call for courts to make "difficult predictions about the future," and "[b]est judgment, rather than perfection, is our standard." In re J.D., 165 Vt. 440, 444-45 (1996). Given the forward-looking nature of the inquiry at issue, the court did not err in recognizing the possibility that mother's serious pending charges could result in her incarceration, impacting her prospective ability to provide day-to-day care for O.L.

Nor did the progress mother made prior to the final day of the hearing preclude the court's finding that significant obstacles still prevented her from meeting O.L.'s immediate need for permanency. The court recognized mother's progress but found that she was not yet in a position to parent full-time for a variety of reasons, including her nascent sobriety and need to reestablish a relationship with O.L. It was for the trial court, not this Court, to weigh this evidence. In re A.F., 160 Vt. at 178.

Finally, mother argues that the court's best-interests analysis was neither appropriately forward-looking nor focused on O.L.'s perspective. See In re N.L., 2019 VT 10, ¶ 9 (explaining that assessment of likelihood parent can resume parental duties in reasonable period is both "forward-looking" and measured "from the perspective of the child's needs"). However, she offers no support for these contentions beyond her disagreement with the court's findings regarding her prospective ability to parent and the significance of the time O.L. spent in DCF custody. As set forth above, those findings are supported by the evidence. The findings in turn support the court's conclusion that termination of mother's parental rights was in O.L.'s best interests. That mother takes a different view of the evidence is not a basis to conclude that the court abused its discretion in terminating her parental rights. See In re S.B., 174 Vt. 427, 429 (2002) (mem.) ("Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating . . . parental rights . . . .").

Father contends that the court erred in terminating his parental rights instead of fashioning a remedy which would allow O.L. to retain her connection with him while assuring her safety, thereby preserving the family unit in an alternative form. In connection with this argument, he notes that the best-interests criteria must be construed in accordance with the statutory purpose "to preserve the family and to separate a child from his or her parents only when necessary to protect the child from serious harm or in the interests of public safety." 33 V.S.A. § 5101(a)(3).

However, preservation of the family is just one of several purposes the Legislature directed courts to consider in construing the statute. See 33 V.S.A. § 5101(a). Among these is the purpose "to ensure that safety and timely permanency for children are the paramount

concerns in the administration and conduct of" termination proceedings. Id. § 5101(a)(4) (emphasis added). Father does not challenge the court's findings that O.L. had an immediate need for permanency and substantial obstacles prevented him from meeting this need. The court concluded that this weighed heavily in favor of the conclusion that it was in O.L.'s best interests to terminate his parental rights. "[T]he court is not obligated to 'preserve the family' at the expense of a child's best interests." In re D.S., 2014 VT 38, ¶ 31, 196 Vt. 325. And though father argues that the court should have created some other, unspecified remedy to retain his connection with O.L. while assuring her safety, "[w]e have repeatedly rejected the claim . . . that the court must consider less drastic alternatives to termination once it has determined the parent to be unfit and unable to resume his or her parental responsibilities." In re G.F., 2007 VT 11, ¶ 20, 181 Vt. 593 (mem.). The court did not abuse its discretion in concluding that it was in O.L.'s best interests to terminate father's parental rights.

Affirmed.

BY THE COURT:

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice

5